Mark L. Stermitz
Jeffrey R. Kuchel
CROWLEY FLECK PLLP
305 South 4th Street East, Ste. 100
Missoula, MT 59801
Telephone: (406) 523-3600
Fax: (406) 523-3636

Julie A. Weis, *pro hac vice*
Haglund Kelley LLP
200 S.W. Market Street, Suite 1777
Portland, OR 97201
Telephone: (503) 225-0777
Fax: (503) 225-1257

William K. Barquin, *pro hac vice*
Kootenai Tribe of Idaho
1000 SW Broadway, Suite 1060
Portland, OR 97205
Telephone: (503)719-4496
Fax: (503) 719-4493

*Counsel for* Amicus Curiae *Kootenai Tribe of Idaho*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES,<br>    Plaintiff,<br>  v.<br>CHRISTOPHER SAVAGE, et al.,<br>    Defendants,<br>        and<br>KOOTENAI FOREST STAKEHOLDERS COALITION, a Montana Corporation and LINCOLN COUNTY, a political subdivision of the State of Montana,<br><br>    Defendant-Intervenors. | Civil Cause No:<br>9:15-cv-00054-DLC<br><br>**AMICUS BRIEF OF THE KOOTENAI TRIBE OF IDAHO** |

# INTRODUCTION

The Kootenai Tribe of Idaho (Kootenai Tribe, or Tribe) is a federally-recognized Indian Tribe headquartered near the town of Bonners Ferry in Idaho's Kootenai River Valley. The Kootenai Tribe has an interest in this forest restoration case involving the East Reservoir Project (Project) on the Kootenai National Forest within the Tribe's aboriginal territory, also known as Kootenai or Ktunaxa Territory. See, e.g., U.S. Forest Service Administrative Record (FSAR) 1601 (acknowledging that the Forest Service engaged in government-to-government consultation with the Tribe over the Project).[1]

The East Reservoir Project's purposes are to:

- Re-establish, restore, and retain landscapes that are more resistant and resilient to disturbance (insect and disease infestations, fire) and uncertain environmental conditions such as climate change;

- Create a heterogeneous landscape that provides a variety of habitats to sustain populations of terrestrial and aquatic species;

- Provide amenities, jobs, and products to the communities;

- Reduce hazardous fuels adjacent to private property and across the landscape while re-introducing fire to the ecosystem; and

---

[1] As set forth in Executive Order 13175, a fundamental principle of government-to-government consultation is that federal agencies "continue[] to work with Indian tribes on a government-to-government basis to address issues concerning Indian tribal self-government, tribal trust resources, and Indian tribal treaty and other rights." 65 Fed. Reg. 67249, 67249 (Nov. 6, 2000).

- Enhance recreation settings and facilities with the goal of providing high quality experiences.

FSAR 29262. The Tribe supports these efforts on national forest lands and in fact is engaged in similar forest restoration work with a variety of partners under the Collaborative Forest Landscape Restoration Program (the CFLR Program) established by Congress in 2009. See generally, 16 U.S.C. §§ 7301–04. The CFLR Program, discussed further below, allows the U.S. Forest Service (Forest Service) to select and fund ecological restoration treatments for forest landscapes that benefit all species, including humans.

At issue in this case from the Tribe's perspective are the reasonable determinations of the Forest Service and U.S. Fish and Wildlife Service (FWS) that the East Reservoir Project: (1) is consistent with the 2011 Grizzly Bear Access Amendments (Grizzly Bear Access Amendments, or Access Amendments), an amendment to the Kootenai Forest Plan analyzing the impacts of roads and road use on grizzly bears;[2] and (2) involves restoration activities that are not likely to adversely affect the grizzly bear such that formal consultation under the Endangered Species Act (ESA) was not required. The Kootenai Tribe's

---

[2] In 2011, the Forest Service adopted the Access Amendments by issuing a Record of Decision for Forest Plan Amendments for Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones. See FSAR 27697–27770. The decision amended the Forest Plans for the Kootenai, Lolo, and Idaho Panhandle National Forests to better control motorized access in grizzly bear habitat for the benefit of the bear.

fundamental concern is that plaintiff Alliance for the Wild Rockies (Alliance) is continuing its serial litigation effort to invite judicial misinterpretation of the Access Amendments in a manner that threatens Tribal citizens' reasonable access to Kootenai National Forest lands for the purpose of exercising Treaty-reserved, off-reservation gathering, hunting and fishing rights, and also religious practices, and in a manner that would impair prudent ecological restoration efforts in Kootenai Territory.[3] The Kootenai Tribe believes the Grizzly Bear Access Amendments reasonably balance the need to protect natural resources with the need for human access to national forests for ecological restoration and exercise of Treaty and religious rights. The Tribe thus seeks to preserve that carefully struck balance and appreciates the opportunity to offer the Court its views to the Court.[4]

---

[3] By addressing these issues, the Tribe does not suggest that federal defendants' and defendant-intervenors' waiver argument is misplaced. See generally Fed. Defs.' Opening Br. (Doc. 33) at 5–9 (original pagination); Def.-Intervenors' Opening Br. (Doc. 40) at 8–10 (original pagination). Indeed, the Alliance's lack of meaningful participation on these issues led to confusion that might otherwise have been ameliorated by the Forest Service. Regardless, the Tribe addresses these issues because of the Alliance's repeated efforts to undermine the careful balance embodied in the Access Amendments. See, e.g., Alliance for the Wild Rockies v. Ashe, No. 9:13-cv-00092-DWM (D. Mont. Oct. 3, 2014), Alliance for the Wild Rockies v. Bradford, No. 9:13-cv-00199-DLC (D. Mont. June 30, 2014), both on appeal to the Ninth Circuit.

[4] The Alliance also raises issues regarding bull trout, which is "an important Treaty resource and culturally significant" fish for the Kootenai Tribe. Ex. A at 3 (so stating in comments offered during the revision process for the Kootenai

# HISTORY AND INTERESTS OF THE KOOTENAI TRIBE OF IDAHO

## Tribal History

The Kootenai Tribe is headquartered near the town of Bonners Ferry in Idaho's Kootenai River Valley. The Ktunaxa (Kootenai) Nation as a whole consists of seven modern bands, including two in the United States—the Kootenai Tribe of Idaho and the Confederated Salish and Kootenai Tribes of the Flathead Reservation—and five in Canada, most of whom are represented by the Ktunaxa Nation Council. See generally http://www.ktunaxa.org. These bands have inhabited portions of Idaho, Montana, Washington, British Columbia and Alberta since time immemorial, and they are divided into Lower and Upper Kootenai groups. The Kootenai Tribe belongs to the Lower Kootenai group, which historically inhabited the area along the Kootenai River from above Kootenai Falls

---

National Forest Plan, which are available in full at http://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5441942.pdf). See also id. at 4 (discussing the Tribe's Treaty resources, including bull trout). Other than this footnote, the Tribe will not address bull trout for the simple reason that the East Reservoir Project does not impact the species. See generally Fed. Defs.' Opening Br. (Doc. 33) at 13–15 (original pagination) (confirming based on the administrative record that bull trout are neither present in the Project area nor affected by Project implementation). More generally, the Tribe has engaged in government to government meetings with FWS related to bull trout recovery and has been tracking the recovery planning efforts, which led to the recent release of a final Bull Trout Recovery Plan. The Tribe will continue to monitor bull trout recovery efforts but has no concerns about the species in the context of this Project.

in present-day Montana to Kootenay Lake in present-day British Columbia. For a general history of the Kootenai Tribe, see http://www.kootenai.org/history.html.

In 1855, the Kootenai, Salish and Flathead Indians were called to a treaty session at Hellgate, Montana for the purpose of ceding territory to the United States government. The Salish and Upper Kootenai Tribes entered into the Hellgate Treaty with the United States on July 16, 1855, 12 Stat. 975, thereby ceding the majority of the Kootenai Territory and creating a reservation near Flathead Lake for the newly-created Confederated Salish and Kootenai Tribes. Although the Kootenai Tribe did not participate in the negotiations or sign the Treaty, the ceded territory included the Idaho Kootenai's aboriginal lands. <u>See generally</u> <u>The Kootenai Tribe or Band of Indians of the State of Idaho v. United States</u>, 8 Ind. Cl. Comm. 504 (1960) (Doc. 154). Subsequently, the United States demanded that the Tribe's members remove to the Flathead Reservation.

Years later, upon recognizing that the Kootenai Tribe was separate and distinct from the Kootenai of the Flathead, United States government representatives traveled to the Bonners Ferry area to discuss the impact of the Treaty with Tribal members. With limited success, the government's Indian agents tried to persuade Kootenai Tribal members living in and around Bonners Ferry to leave their aboriginal homeland and take allotments on the Flathead Reservation. The United States government eventually gave up, and the remaining members of

the Kootenai Tribe stayed in the Bonners Ferry area. These members later received land allotments under Section 4 of the Indian General Allotment Act of 1887, 24 Stat. 388, as amended, 25 U.S.C. § 331 et seq.

Article III of the Hellgate Treaty reserved to the Kootenai Tribe the right to fish at usual and accustomed fishing places and hunt and gather on open and unclaimed lands. Open and unclaimed lands include the National Forests located in Kootenai Territory, primarily the Kootenai and Idaho Panhandle National Forests. Tribal members continued to hunt, fish and gather throughout Kootenai Territory after the Treaty session, but this became increasingly more difficult. Tribal allotments were lost to non-Indians through fraudulent transactions and surveying errors, and the increasing private ownership of property led to decreased hunting, fishing and harvesting opportunities.

Over the years, the National Forests in Kootenai Territory, which are home to many of the Tribe's Treaty resources, were subject to misguided management that removed fire from the forest landscape. This led to decreased forest resiliency and a forest landscape that deviated from its natural range of variability. The result was an unhealthy forest ecosystem, decreased fish and game, and endangerment of Kootenai Treaty resources, all to the detriment of Tribal members.

## Tribal Interests

The Kootenai Tribe is a strong and active sovereign that focuses its energies on remaining true to its creation story by keeping the Creator-Spirit's Covenant to guard and keep the land forever, with the understanding the land in turn will provide for the Tribe if properly managed. The Tribe's identity depends in large part on caring for the native fish and wildlife species in Kootenai Territory, whether for cultural, subsistence or ceremonial purposes, and the Tribe plays an active role in protecting and recovering such species. The Tribe has never lost sight of its original purpose as guardian of the land, and it continues to possess federally-reserved hunting, fishing and gathering rights within its lands and in certain off-reservation areas. See, e.g., State v. Coffee, 556 P.2d 1185, 1189–93 (Idaho 1976).

As a sovereign with inherent powers of self-determination, the Tribe has a right and responsibility to protect its federally-reserved rights and trust resources. And because the Tribe's resource conservation policy is based on collaboration, the Tribe works cooperatively with federal, state, provincial, local and community representatives to achieve mutually agreeable resource management decisions. For example, the Tribe's strong leadership on behalf of natural resources in Ktunaxa Territory has resulted in the Tribe's ambitious implementation of a long-term, ecosystem-based river restoration project called the Kootenai River Habitat

Restoration Program, which seeks a holistic approach to restoring healthy river functions for the benefit of all concerned. Detailed information about the Tribe's innovative Kootenai River Habitat Restoration Program is available at http://restoringthekootenai.org.

The Kootenai Tribe particularly appreciates the East Reservoir Project because of the high degree of collaboration between the Forest Service and the Kootenai Forest Stakeholders Coalition—a forest collaborative—that shaped the Project. See Def.-Intervenors' Opening Br. (Doc. 40) at 1–6.[5] The Kootenai Tribe was instrumental in creating, and is an active participant in, a similar collaborative called the Kootenai Valley Resource Initiative (KVRI). Like the Kootenai Forest Stakeholders Coalition, KVRI is a collaborative group having diverse members, including the Tribe, the City of Bonners Ferry, Idaho, Boundary County, Idaho, private citizens and landowners, federal and state agencies, environmental advocacy groups and representatives of business and industry in the Kootenai Valley. See generally Kootenai Valley Resource Initiative, http://www.kootenai.org/kvri.html (explaining that the KVRI's mission is to "restore and maintain social, cultural, economic and natural resources").

---

[5] All references to page numbers in the parties' briefs refer to original pagination, not ECF pagination.

Of particular relevance to this case, the Tribe and its KVRI partners engage in real, hands-on efforts to meaningfully aid grizzly bear conservation. These efforts include working to better educate the public about the species to minimize grizzly bear-human interactions, which often end badly for the bear. See, e.g., Ex. B at 2 (acknowledging the importance of public education, including that offered by the KVRI, to help "in addressing public awareness, education, understanding of the issues, and ultimately a broad-based community effort related to grizzly bear recovery"); id. at 7 (Kootenai Tribe's comments on the Access Amendments encouraging the Forest Service to "[a]cknowledge the efforts of local communities that work in a proactive way to assist grizzly bear recovery").

The Tribe and its KVRI partners also are active proponents of forest restoration work like that involved in the East Reservoir Project. In 2011, the KVRI promulgated the Lower Kootenai River Watershed Collaborative Forest Landscape Restoration Proposal (KVRI Restoration Proposal) as part of the CFLR Program.[6] The CFLR Program "encourage[s] the collaborative, science-based ecosystem restoration of priority forest landscapes." 16 U.S.C. § 7301. Six ecological restoration projects are in the works under the KVRI Restoration Proposal, all of which are subject to the Access Amendments as they are on the

---

[6] The KVRI CFLR Proposal is available at http://www.kootenai.org/documents/ KVRILowerKootenaiRiverWatershedCFLRPProposal2.2011.pdf.

Idaho Panhandle National Forest.  See KVRI Project Timelines, http://www.kootenai.org/documents/KVRIProjectTimelines6.17.13.pdf, which lists the six restoration projects, i.e., the Twenty Mile Creek, Idaho Buckhorn, Kreist Creek, Hellroaring, Boulder and Deer Creek projects in Kootenai Territory.

The Tribe's engagement in the natural resources management arena does not stop with KVRI but rather includes working cooperatively with fellow sovereigns throughout Kootenai Territory.  Given the Tribe's history and deeply-rooted commitment to caring for fish and wildlife in Kootenai Territory, it was natural for the Tribe to involve itself in the development of the Access Amendments and to be an advocate for the prudent management of Kootenai Territory lands.  See, e.g., Ex. B at 5–8 (Tribe's comments on the Access Amendments); see also id. at 3 (acknowledging that the Tribe advocated for needed "flexibility in management for access . . . considerations"); id. at 4 (discussing the Tribe's concerns about continued access for "traditional uses within the Forests' boundaries").

The above discussion provides the foundation for the Kootenai Tribe's concerns about Tribal citizens' reasonable access to National Forest lands in Kootenai Territory, and also for with the Tribe's commitment to proactive habitat restoration on such lands.  The remainder of this amicus brief focuses on why the Alliance's interpretation of the East Reservoir Project with respect to the grizzly

bear is misguided and could impair future habitat restoration efforts in Kootenai territory.

## SPECIFIC CONCERNS OF THE KOOTENAI TRIBE

**1.** **The Federal Defendants' Conclusion that the East Reservoir Project is Consistent with the Access Amendments is Both Correct and Entitled to Deference.**

Federal defendants' brief makes clear that the East Reservoir Project is consistent with Standard II.B of the Access Amendments. Fed. Defs.' Opening Br. (Doc. 33) at 16–19. Standard II.B prohibits a "net permanent increase[] in linear miles of total roads in any individual BORZ [bear reoccurring use areas outside of the recovery zones] above the baseline," FSAR 27764, which in this case means the Tobacco BORZ. Standard II.B does not prohibit temporary increases in linear miles of total roads during the life of a project so long as certain conditions (not at issue here) are satisfied. FSAR 27765 (Standard II.B.a-c). Standard II.B is the only Access Amendment provision challenged by the Alliance. Pl.'s Opening Br. (Doc. 17) at 8–10.

The environmental documents for the East Reservoir Project explain that Project implementation will lead to a reduction, not an increase, in linear miles of total roads within the Tobacco BORZ. See, e.g., FSAR 29375 (Project implementation will lead to "a net reduction of 0.3 miles for this portion of the Tobacco BORZ which is consistent with the 2011 Access Amendment because the

cumulative baseline condition for linear total miles of road in the Tobacco BORZ is slightly improved"); FWS Administrative Record (FWSAR) 2 ("[A] net reduction of 0.3 miles of linear total roads within the Tobacco BORZ is proposed, slightly improving habitat conditions for grizzly bears utilizing the Tobacco BORZ."). FSAR 29375 shows the approximately 2.49 miles of road to be decommissioned in Table 3 and the 2.2 miles of new permanent roads in Table 4; the difference between the decommissioned roads and the new permanent roads equals the approximately 0.3 mile reduction in linear total miles of road within the Tobacco BORZ.

The Alliance tries to create an Access Amendment violation by selectively characterizing 2.6 miles of undetermined roads that already exist within the Project area as new, just because they are being reclassified as National Forest System Roads. In doing so, the Alliance errs. The term "linear total miles" of road includes "all roads that are open, seasonally open, or restricted that occur on the landscape and in the Forest Service travel management system database . . . ." FSAR 29375. The Project's Travel Analysis Report shows that undetermined roads in the Project area are included in the database. FSAR 8169; see also FSAR 15887 (showing same in Table 3.119). Thus, federal defendants correctly explain that undetermined roads already are part of the linear total miles of road baseline. Fed. Defs.' Opening Br. (Doc. 33) at 18. The Forest Service's interpretation of its

Kootenai Tribe of Idaho
Amicus Brief                                        12

governing Forest Plan—the Kootenai Forest Plan with its Access Amendments—not only is correct but also is entitled to substantial deference.  E.g. Siskiyou Reg'l Educ. Project v. U.S. Forest Serv., 565 F.3d 545, 555 (9th Cir. 2009) (acknowledgement by the Ninth Circuit that it defers to "the Forest Service's interpretation of plan directives [including those] that are susceptible to more than one meaning unless the interpretation is plainly erroneous or inconsistent with the directive").  Compliance with Standard II.B is clear in this case, but even if it were not, the Forest Service would be entitled to deference on this issue.

**2. The Alliance's Interpretation of the East Reservoir Project Threatens to Impair Future Habitat Restoration Efforts in Kootenai Territory.**

The Kootenai Tribe and its fellow sovereigns are working diligently and collaboratively to improve the forest ecosystem in Kootenai Territory.  One such effort is the above-described participation of the Tribe and its partners in the CFLR Program to further holistic forest restoration work in the Lower Kootenai River watershed.  Although the Alliance is not taking issue with a CFLR Program project in this case, the Kootenai Tribe is concerned that the Alliance seeks to undermine the value of the 2011 programmatic Biological Opinion for the Access Amendments (Programmatic BiOp), see FSAR 24470–696, or perhaps the use of programmatic analyses in the context of tiered consultations generally, to unduly tie the hands of land managers who seek to improve forest conditions through active land management.

During the East Reservoir consultation process, FWS explained that the possible effects of Project implementation were within the range of effects analyzed in the Programmatic BiOp:

> On October 18, 2011, the Service issued the biological opinion on the effects of the Access Amendment. . . . The biological opinion has been identified as the first-tier of a tiered consultation framework, with the review of subsequent projects related to access management that may affect grizzly bears as being the second-tier of consultation . . . .
>
> . . . . We agree with the Forest that the range-of-effects of the existing linear miles of open and total roads in the Tobacco BORZ [bear reoccurring use areas outside of the recovery zones] were analyzed in the 2011 biological opinion on the Access Amendment as part of the baseline condition.
>
> Based on our review of the revised biological assessment and additional information received, the Service concurs that the project-related effects of the proposed East Reservoir Project on grizzly bears would not impose additional adverse effects to the threatened grizzly bear than what was previously analyzed in the 2011 biological opinion.

FWSAR 2. The Alliance disagrees, pointing to the alleged effects of such Project activities as log hauling, helicopter burning, and timber harvest (removal of vegetative cover). Pl.'s Opening Br. (Doc. 17) at 14; cf. FWSAR 2–3 (explaining why such Project activities will have an insignificant effect on the grizzly bear).

In the Tribal Interests section of this amicus brief, the Kootenai Tribe referenced six ecological restoration projects in various stages of planning under the KVRI Restoration Proposal, all of which are subject to the Access

Amendments.  Five of those projects—the Twenty Mile Creek, Idaho Buckhorn, Kreist Creek, Deer Creek and Hellroaring projects—are available for review on the Idaho Panhandle National Forest website.  See http://www.fs.usda.gov/projects/ ipnf/landmanagement/projects (showing that analysis has been completed for the Hellroaring project whereas the Deer Creek project is under analysis); see also http://www.fs.usda.gov/wps/portal/fsinternet/projects/ipnf/landmanagement/project s?archive=1&sortby=1 (showing that analysis has been completed for the Idaho Buckhorn, Kreist Creek and Twenty Mile Creek projects).

All five of the KVRI Restoration Proposal projects described on the Idaho Panhandle National Forest website involve one or more of the types of restoration activities that the Alliance complains about for East Reservoir, namely log hauling, helicopter burning, and timber harvest.  By clicking on the particular project link, an interested reader would learn, for example, that the Idaho Buckhorn project involves prescribed burning of fuels, including through the use of aerial ignition via helicopter, for purposes that include whitebark pine restoration for the benefit of grizzly bears.  One also would learn that the Deer Creek, Hellroaring, Kreist Creek and Twenty Mile Creek projects involve timber harvest (and hence log hauling) for the benefit of the forest and its inhabitants.  The Tribe supports the use of these land management tools to accomplish the goals of watershed and

ecosystem health, wildfire protection, public access to national forest lands and economic sustainability of local communities.

The Tribe points to the KVRI Restoration Proposal projects not to suggest they mirror the East Reservoir Project in all aspects. Rather, the projects being developed under the CFLR Program are but a few of the future beneficial landscape restoration projects that will implicate the Access Amendments and/or the Access Amendments' environmental analyses. The Alliance's misinterpretation of the East Reservoir Project's effects thus has the potential to unduly restrict land managers who seek to restore the forest landscape, including by undermining federal agencies' abilities to rely on helpful programmatic analyses through the lawful tiering process. See 40 C.F.R. § 1508.28 (discussing tiering, which allows a decision maker to concentrate on the specific issues at hand without having to revisit issues already analyzed). The Tribe does not support an effort to paralyze through redundant analyses the planning and implementation of collaborative landscape restoration projects aimed at benefitting fish and wildlife, including grizzly bears. The Court should not substitute the Alliance's interpretation of the East Reservoir Project's likely impacts for those of the Forest Service and FWS, both out of deference to the expert federal agencies and also for the benefit of natural resources in Kootenai Territory.

## CONCLUSION

The Kootenai people have inhabited the Project area since time immemorial without losing sight of their purpose as guardians of the land. Ex. A at 2 ("Management of the National Forests within Kootenai territory is important to the Tribe to fulfill [its] Covenant with [the] Creator to keep and guard the land forever."). The Tribe did not oppose the East Reservoir Project after government-to-government consultation. The Tribe respectfully urges the Court to decline the Alliance's invitation to construe this Project in a manner that would further impede Tribal citizens' access to their aboriginal territory or impair holistic habitat restoration efforts in Kootenai Territory.

DATED this 30th day of November, 2015.

> /s/ Julie A. Weis
> Julie A. Weis
> Haglund Kelley LLP
> Portland, Oregon
>
> William K. Barquin
> Kootenai Tribe of Idaho
> Portland, Oregon
>
> Mark L. Stermitz
> Jeffrey R. Kuchel
> Crowley Fleck PLLP
> Missoula, Montana
>
> *Attorneys for* Amicus Curiae
> *Kootenai Tribe of Idaho*

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Rule 7.1(d)(2)(E) of the District of Montana Local Rules, that the foregoing, Amicus Brief of the Kootenai Tribe of Idaho, contains 3814 words (as counted by Microsoft Word 2010), excluding the caption and certificates of compliance and service, is double spaced, and printed in at least 14 point font.

# CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2015, I served a true and correct copy of the foregoing document, by the means indicated:

| | |
|---|---|
| [ ] U.S. Mail<br>[ ] FedEx<br>[ ] Hand-Delivery<br>[ ] Facsimile<br>[ ] Email<br>[X] ECF Electronic filing | Timothy M. Bechtold<br>BECHTOLD LAW FIRM, PLLC<br>PO Box 7051<br>Missoula, MT 59807 |
| [ ] U.S. Mail<br>[ ] FedEx<br>[ ] Hand-Delivery<br>[ ] Facsimile<br>[ ] Email<br>[X] ECF Electronic filing | Rebecca Kay Smith<br>Public Interest Defense Center<br>PO Box 7584<br>317 East Spruce Street<br>Missoula, MT 59807 |
| [ ] U.S. Mail<br>[ ] FedEx<br>[ ] Hand-Delivery<br>[ ] Facsimile<br>[ ] Email | John P. Tustin<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>Natural Resources Section<br>P.O. Box 663 |

| | |
|---|---|
| [X]  ECF Electronic filing | Washington, DC 20044-0663 |
| [ ]  U.S. Mail | Jacqueline C. Brown |
| [ ]  FedEx | U.S. Department of Justice |
| [ ]  Hand-Delivery | Environmental Enforcement |
| [ ]  Facsimile | PO Box 7611 |
| [ ]  Email | Ben Franklin Station |
| [X]  ECF Electronic filing | Washington, DC 20044-7611 |
| [ ]  U.S. Mail | W. Carl Mendenhall |
| [ ]  FedEx | Matthew J. Cuffe |
| [ ]  Hand-Delivery | WORDEN THANE P.C. |
| [ ]  Facsimile | 111 N. Higgins Ave., Ste. 600 |
| [ ]  Email | P.O. Box 4747 |
| [X]  ECF Electronic filing | Missoula, MT 59806 |
| [ ]  U.S. Mail | Lawson E. Fite |
| [ ]  FedEx | American Forest Resource Council |
| [ ]  Hand-Delivery | 5100 S.W. Macadam, Ste. 350 |
| [ ]  Facsimile | Portland, OR 97239 |
| [ ]  Email | |
| [X]  ECF Electronic filing | |

By: */s/ Julie A. Weis*