**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | No. 16-35589 |
| *Plaintiff-Appellant,* | D.C. No. 9:15-cv-00054-DLC |
| v. | |
| CHRISTOPHER SAVAGE, Kootenai National Forest Supervisor; FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; U.S. FISH & WILDLIFE SERVICE, an agency of the U.S. Department of the Interior, | OPINION |
| *Defendants-Appellees,* | |
| and | |
| KOOTENAI FOREST STAKEHOLDERS COALITION, a Montana Corporation; LINCOLN COUNTY, a political subdivision of the State of Montana, | |
| *Intervenor-Defendants-Appellees.* | |

2        ALLIANCE FOR THE WILD ROCKIES V. SAVAGE

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted February 9, 2017
Seattle, Washington

Filed July 26, 2018

Before:  Raymond C. Fisher, Richard A. Paez,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Environmental Law

The panel reversed in part and vacated in part the district court's summary judgment and remanded in an action brought by the Alliance for Wild Rockies against the United States Forest Service, the Fish and Wildlife Service, and others seeking to enjoin implementation of the East Reservoir Project on the Kootenai National Forest in northwest Montana.

The Project contemplates a number of land management activities such as logging, thinning, and road construction and maintenance. These activities will take place in areas where two threatened species are present—the Canada lynx and the Cabinet-Yaak grizzly bear.

The Alliance first asserted that the Forest Service's decision to approve the Project was arbitrary and capricious because it improperly relied on the 2007 Northern Rocky Mountains Lynx Management Direction ("Lynx Amendment") in determining the impact of Project activities on lynx and lynx critical habitat. The Alliance argued that the Forest Service should have requested reconsultation with the Fish and Wildlife Service on the Lynx Amendment, pursuant to the Endangered Species Act § 7, after the Fish and Wildlife Service designated large areas of lynx critical habitat on national forest land, including the Kootenai National Forest. The panel noted that while this appeal was pending, the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Forest Service reinitiated consultation with the Fish and Wildlife Service, and after oral argument, the Fish and Wildlife Service issued a new biological opinion for the Lynx Amendment, completing the reconsultation process. The panel therefore vacated the portion of the district court's summary judgment order that addressed the reconsultation claim and remanded with instruction to dismiss the claim as moot.

The panel held that the Alliance was entitled to summary judgment on its second claim that, in approving the East Reservoir Project, the Forest Service failed to comply with the Motorized Vehicle Access Act (Access Amendments), which set standards for grizzly bear habitat on Forest Service Land. The panel held that the Forest Service's failure to analyze whether the Project would increase the total linear miles of permanent roads within an area designated as the Tobacco BORZ polygon beyond the baseline did not satisfy the plain terms of the Access Amendments and was therefore arbitrary and capricious. The panel reversed the district court's summary judgment and instructed the district court to remand the issue to the Forest Service for further proceedings consistent with the panel's opinion.

---

## COUNSEL

Rebecca Kay Smith (argued), Public Interest Defense Center, Missoula, Montana; Timothy M. Bechtold, Bechtold Law Firm, Missoula, Montana; for Plaintiff-Appellant.

Tamara N. Rountree (argued), Jacqueline C. Brown, John P. Tustin, David C. Shilton, and Andrew C. Mergen, Attorneys; John C. Cruden, Assistant Attorney General; Environment

and Natural Resources Division, United States Department of Justice, Washington, D.C.; Kate Williams-Shuck, Attorney-Advisor, United States Department of the Interior, Rocky Mountain Regional Solicitor's Office, Billings, Montana; Alan Campbell, Attorney Advisor, United States Forest Service, Region One, Missoula, Montana; for Defendants-Appellees.

Lawson Emmett Fite (argued), American Forest Resource Council, Portland, Oregon, for Intervenor-Defendants-Appellees.

Julie A. Weis and Sara Ghafouri, Haglund Kelly LLP, Portland, Oregon; William K. Barquin, Attorney General, Kootenai Tribe of Idaho, Bonners Ferry, Idaho, for Amicus Curiae Kootenai Tribe of Idaho.

## OPINION

PAEZ, Circuit Judge:

Alliance for the Wild Rockies ("Alliance") filed this lawsuit against the United States Forest Service, several Forest Service officials and the Fish and Wildlife Service ("FWS") (collectively, "Federal Defendants") to enjoin implementation of the East Reservoir Project ("Project") on the Kootenai National Forest in northwest Montana. The Project contemplates a number of land management activities such as logging, thinning, and road construction and maintenance. These activities will take place in areas where two threatened species are present—the Canada lynx[1] and the Cabinet-Yaak grizzly bear.[2]

Of the multiple claims Alliance initially alleged, only two are at issue in this appeal. First, Alliance challenges the Forest Service's decision to approve the Project as arbitrary and capricious because it improperly relied on the Northern Rocky Mountains Lynx Management Direction ("Lynx Amendment") in determining the impact of Project activities

---

[1] Although the Canada lynx was listed as a threatened species in 2000, it was not until 2009 that the FWS designated the vast majority of its critical habitat on National Forest lands. See *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.,* 789 F.3d 1075, 1077–78 (9th Cir. 2015), *cert. denied,* 137 S. Ct. 293 (2016) ("*Cottonwood*").

[2] The Cabinet-Yaak grizzly bear is part of a distinct population of grizzly bear found in the Cabinet-Yaak ecosystem of Montana and Idaho. The grizzly bear was listed as a threatened species in 1975. 40 Fed. Reg. 31734 (1975). As of 2008, the Cabinet-Yaak grizzly bear population had dwindled to approximately forty-two bears.

on lynx and lynx critical habitat.[3]  The basis for this argument
is that in 2009, after the Forest Service adopted the Lynx
Amendment in 2007, the FWS designated large areas of lynx
critical habitat on National Forest lands, including the
Kootenai National Forest.  Despite this new designation of
critical habitat, the Forest Service did not request
reconsultation on the Lynx Amendment with the FWS under
ESA § 7, 16 U.S.C. § 1536(a)(2).  In light of these
developments, Alliance argued that the Forest Service could
not properly rely on the Lynx Amendment until it reinitiated
consultation with the FWS, and the FWS completed
reconsultation by issuing a new biological opinion for the
Lynx Amendment.  We addressed the Forest Service's
obligation to reinitiate consultation on the Lynx Amendment
in *Cottonwood Environmental Law Center v. U.S. Forest
Service*, where we held that it was required to do so.
789 F.3d 1075, 1085–88 (9th Cir. 2015), *cert. denied*, 137 S.
Ct. 293 (2016).

While this appeal was pending, the Forest Service
reinitiated consultation with the FWS, and after we heard
argument, the FWS issued a new biological opinion for the

---

[3] The Lynx Amendment incorporated management direction into
eighteen National Forests, including the Kootenai National Forest, by
"set[ting] specific guidelines and standards for permitting activities that
are likely to have an adverse effect on the Canada lynx."  *Cottonwood*,
789 F.3d at 1078.  The goal of the Lynx Amendment was to conserve and
promote the recovery of the lynx while also allowing some recreation and
other activities to continue.  *Id.*; *see also* U.S. Forest Service, Northern
Rockies Lynx Management Direction (March 2007), *available at*
https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd567795.pdf
(last visited April 13, 2018).

Lynx Amendment, completing the reconsultation process.[4] As a result of these events, Federal Defendants moved to dismiss the lynx ESA § 7 reconsultation claim on the ground that it is moot. In response, Alliance agreed but requested that we vacate the district court's ruling on this claim. The Intervenor Defendants disagree and urge us to decide Alliance's lynx ESA claim on a theory not advanced by Alliance or the district court. As we explain below, we agree this claim is moot. We therefore dismiss it, and remand to the district court with directions to vacate the part of its summary judgment ruling that addresses this lynx related claim and to dismiss it as moot.

Alliance's second argument on appeal arises under NFMA and relates to the Forest Service's failure to comply with the Motorized Vehicle Access Amendments ("Access Amendments"), which set standards for grizzly bear habitat on Forest Service land. Alliance argues that the total road maintenance and construction in an area in which the Cabinet-Yaak grizzly bears are found exceeds the total road mileage "baseline" standard established by the Access Amendments and an earlier Grizzly Bear Recovery Plan ("Recovery Plan"). Alliance asserts that the Forest Service acted arbitrarily and capriciously in approving the Project without complying with this standard. The district court rejected this claim and granted summary judgment to Defendants. *All. for the Wild Rockies v. Savage*, 209 F. Supp. 3d 1181, 1194 (D. Mont. 2016). We reverse and in so doing, we reject the Federal Defendants' argument that Alliance

---

[4] We may properly consider post-judgment facts that establish mootness. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997); *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1094–95 (9th Cir. 2001).

waived this claim by failing to raise it during the administrative process.

## I.

### A.

The Forest Service engaged in a multi-step process before approving the Project. At the outset, after determining that the Project area included lynx and Cabinet-Yaak grizzly bear habitat, the Forest Service prepared a Biological Assessment to evaluate whether the Project would adversely affect those threatened species. The Forest Service concluded that the Project "may affect, [but] is not likely to adversely affect" lynx or Cabinet-Yaak grizzly bears, or their respective habitats. The Forest Service transmitted the Biological Assessment to the FWS, and thereafter engaged in informal consultation with the FWS.[5] In the meantime, the Forest Service prepared and published a Draft Environmental Impact Statement as required by NEPA, in which it reiterated its conclusion that the Project would not adversely affect the lynx or the Cabinet-Yaak grizzly bear. *See* 78 Fed. Reg.

---

[5] ESA regulations provide for two categories of ESA consultation between the agency proposing an action (here, the Forest Service) and the agency with wildlife expertise (here, the FWS): informal and formal. *See* 50 C.F.R. § 402.13 (informal consultation); 50 C.F.R. § 402.14 (formal consultation). Informal consultation occurs when the action-proposing agency determines in a biological assessment that the action "is not likely to adversely affect listed species or critical habitat," and the wildlife agency concurs in writing, thereby terminating the consultation process. 50 C.F.R. § 402.13(a). No further interaction between the agencies is required. *Id*. § 402.13(a). In contrast, formal consultation occurs when the proposed action "may affect" listed species or critical habitat, and requires the consulting agency (FWS) to prepare a biological opinion. 50 C.F.R. § 402.14(a)–(b), (g).

35928, 35928 (June 14, 2013); 78 Fed. Reg. 43200-01, 43200 (July 19, 2013).

After issuance of the Draft Environmental Impact Statement, the Forest Service received the FWS's concurrence. The FWS agreed with the Biological Assessment's conclusion that the threatened species would not be jeopardized and their habitats would not be adversely affected. The Forest Service subsequently prepared and published a Final Environmental Impact Statement, followed by a Record of Decision approving the Project. *See* 79 Fed. Reg. 15741-01 (Mar. 21, 2014); U.S. Forest Service, East Reservoir Project Documents, *available at* https://www.fs.usda.gov/project/?project=34594 (last visited April 10, 2018).

**B.**

After the Project's final approval, Alliance filed this action against Federal Defendants: the Kootenai National Forest Supervisor, the Region One Forester for the Forest Service, the Forest Service, and the FWS. The basis for Alliance's claims under the ESA, NFMA and NEPA was the allegedly erroneous analysis of the effects of the Project on lynx and Cabinet-Yaak grizzly bears and both species' habitats.[6] The Kootenai Forest stakeholders coalition and Lincoln County were granted leave to intervene on behalf of the Federal Defendants.

---

[6] Alliance also asserted claims regarding the effect of the Project on other endangered species, such as bull trout. On appeal, Alliance does not challenge the district court's rejection of those claims.

Alliance filed a motion for summary judgment. Federal Defendants and Intervenor Defendants[7] filed separate cross-motions for summary judgment. The district court granted summary judgment to Defendants, and denied summary judgment to Alliance. *All. for the Wild Rockies*, 209 F. Supp. 3d at 1199–1200. Alliance timely appealed.[8]

## II.

We first consider the threshold jurisdictional issue of whether Alliance's lynx ESA § 7 reconsultation claim is moot. Although Alliance and the Federal Defendants agree that this claim is moot, we have an independent obligation to determine our jurisdiction. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016). Upon review of the record and the responses to the Federal Defendants' motion to dismiss, we conclude the claim is moot.

A claim is moot if it "has lost its character as a live controversy." *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-*

---

[7] We refer to Federal Defendants and the Intervenor Defendants, collectively, as "Defendants."

[8] The district court denied Alliance's motion for an injunction pending appeal. Alliance then sought an injunction from our court, which a motions panel granted. The motions panel enjoined the Project in its entirety. Defendants subsequently moved to modify the injunction to permit certain activities in lynx habitat, which we granted in part and denied in part. Because the injunction was based on the lynx ESA § 7 reconsultation claim, which as discussed below is moot, there is no continuing basis for the injunction. *See Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 559 (9th Cir. 2000) (denying injunctive relief as a result of further agency studies to supplement an EIS that initially violated NEPA). Therefore, we vacate the injunction.

*Jolly*, 590 F.3d 725, 727 (9th Cir. 2009).  Under Article III of the Constitution, "a live controversy [must] persist throughout all stages of the litigation."  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128–29 (9th Cir. 2005) (en banc); *see also Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).  A "court must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal." *Pub. Utilities Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996); *see also W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011).

On appeal, Alliance advances two related ESA arguments.  First, it argues that the Forest Service's decision to approve the Project was arbitrary and capricious because it relied on the Lynx Amendment before FWS completed reconsultation as directed by our holding in *Cottonwood*. Second, Alliance argues that the Forest Service's finding of "no adverse affect" on lynx and lynx critical habitat in the Biological Assessment for the Project and FWS's concurrence in that finding before completion of the reconsultation process was arbitrary and capricious. Although Alliance argues that the "no adverse affect" finding fails to satisfy the Forest Service's definition of that term, this argument is subsumed within Alliance's ESA § 7 reconsultation claim.

We agree with the Federal Defendants that Alliance's lynx related claim is properly characterized as a reconsultation claim under ESA § 7, as Alliance was seeking reconsultation.  We further agree with the Federal Defendants and Alliance that this claim is moot as there is no effective relief available to Alliance; it has obtained all that it sought

with this claim. *See FERC*, 100 F.3d at 1458. Lacking jurisdiction over this claim, we dismiss it.[9] *Id.*

Alliance also argues that because this aspect of the case is now moot, we should vacate the district court's summary judgment ruling as it pertains to Alliance's reconsultation claim. Vacatur is proper "in cases where intervening events moot a petition for review of an agency order." *Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir. 2011). When deciding whether to vacate a moot judgment, "causation of mootness is a threshold question." *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006); *see also United States v. Munsingwear*, 340 U.S. 36, 39 (1950). When mootness is caused by the party seeking vacatur, then we typically will remand to the district court to allow it to balance the equities and determine whether it should vacate its own order. *Helliker*, 463 F.3d at 878. When mootness is not caused by actions of the party seeking vacatur, we typically will vacate the district court's order. *Id.* In this instance, Alliance requests vacatur because the FWS completed reconsultation on the Lynx Amendment. Mootness was therefore caused by the Federal Defendants who rendered the claim moot by providing the relief

---

[9] Intervenor Defendants argue that we should affirm the district court's summary judgment ruling because the Forest Service effectively completed reconsultation as required by *Cottonwood* when the FWS completed consultation on a new Kootenai National Forest Plan in 2013. Alliance, however, did not base its reconsultation claim on the Kootenai Forest Plan and related FWS biological opinion. We therefore decline Intervenor Defendants' request to recast Alliance's ESA § 7 claim, especially where the claim it did allege is moot. *See All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014) ("Reinitiation of consultation is the precise relief sought by Alliance. Accordingly, Alliance's Section 7 claim is moot.").

requested by Alliance.**[10]**  *See, e.g., Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1071, 1075 (9th Cir. 1995) (dismissing a case as moot and vacating the judgment below after the issuance of a new biological opinion).   Given these events, we vacate the part of the district court's summary judgment ruling addressing the ESA § 7 reconsultation claim and remand with instructions to dismiss it as moot.**[11]**

## III.

"The NFMA . . . provide[s] for forest planning and management by the Forest Service on two levels: (1) forest level and (2) individual project level." *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1056 (9th Cir. 2012). "On the forest level, the . . . []forest plan[] . . . consists of broad, long-term plans and objectives for the entire forest." *Id.*

---

[10] Intervenor Defendants argue that the ESA § 7 claim is moot as a result of Alliance and other environmental plaintiffs filing lawsuits such as this one to compel reconsultation on the Lynx Amendment. Therefore, according to Intervenor Defendants it is not mere "happenstance" that reconsultation occurred, but rather was the result of Alliance's own actions.   This, however, reads "causation" too broadly.   The FWS "caused" the mootness by completing the reconsultation process at the Forest Service's request. Additionally, our holding in *Cottonwood* that the Forest Service was required to reinitiate consultation with the FWS serves to sever any causal ties to Alliance's own actions. *Cf. Helliker*, 463 F.3d at 879 (holding that vacatur was appropriate despite the fact that a party had contributed to mootness by lobbying the state legislature to amend the statutory scheme at issue).

[11] Alliance's unopposed motion for judicial notice of the Forest Service's November 2, 2016 letter requesting reconsultation (Dkt. No. 54) is granted and the Federal Defendants' motion to strike (Dkt. No. 61) is denied.

"After a forest plan is approved, the Forest Service implements the forest plan when approving or denying site-specific projects." *Id.* Failing to comply with the provisions of a forest plan is a violation of NFMA. *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 961 (9th Cir. 2005).

The Kootenai National Forest Plan includes the "Access Amendments," which provide restrictions on road miles in certain areas of the Kootenai Forest occupied by the listed Cabinet-Yaak grizzly bears.[12] Alliance argues that it was arbitrary and capricious for Federal Defendants to conclude that the Project would not increase the total road miles beyond the cap provided for by the Access Amendments.

Defendants argue that Alliance waived this argument, so we begin with a discussion of whether the claim is waived before turning to the merits. In discussing the merits, we start with a brief background of the Access Amendments, followed by a discussion of Federal Defendants' purported compliance with the Access Amendments in evaluating the Project. We then analyze whether Federal Defendants satisfied the clear mandate of the Access Amendments, conclude that they failed to do so, and reverse the district court's grant of summary judgment to Defendants. On remand, the district

---

[12] In 1999, the Fish and Wildlife Service ("FWS") found that reclassification of the distinct population of Cabinet-Yaak grizzly bear from threatened to endangered was "warranted but precluded by work on other higher priority species." 64 Fed. Reg. 26725-01, 26725 (May 17, 1999). In 2014, the FWS again considered "uplisting" the Cabinet-Yaak grizzly bear, but declined to do so. 79 Fed. Reg. 72450, 72488 (Dec. 5, 2014). A district court, however, recently remanded that determination to the FWS. *See All. for the Wild Rockies v. Zinke*, 265 F. Supp. 3d 1161, 1182 (D. Mont. 2017).

court is directed to remand this issue to the Forest Service for further proceedings consistent with this opinion.

**A.**

We review de novo the district court's decision to grant summary judgment. *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005). We review Federal Defendants' compliance with NFMA under the standard provided by the Administrative Procedure Act, meaning that we may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). *Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 846 (9th Cir. 2013). Such review "is deferential and narrow, requiring a high threshold for setting aside agency action following public notice and comment." *Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 675 (9th Cir. 2016) (internal quotation marks omitted).

**B.**

At the outset, we must determine whether Alliance waived its claim regarding the Cabinet-Yaak grizzly bear. Defendants argue that Alliance failed to raise this argument in a timely manner during the agency proceedings. After oral argument, we asked for supplemental briefing to further clarify the issue.

"Absent exceptional circumstances, . . . belatedly raised issues may not form a basis for reversal of an agency decision." *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991) (per curiam). Here, Alliance did not file an objection to the alleged increase in total linear road miles until after issuance of the Final Environmental Impact

Statement, which, in the typical case, would be untimely. *See* 36 C.F.R. § 218.8(c); *Havasupai Tribe*, 943 F.2d at 34 (noting that issues raised after publication of the final environmental impact statement were "belatedly raised" and concluding that the appellant "had some obligation to raise these issues during the comment process").

This, however, is not a typical case; Alliance's failure to object at an earlier time resulted from the Forest Service's failure to disclose this aspect of the Project in the Draft Environmental Impact Statement. It was first revealed in the Final Environmental Impact Statement,[13] to which Alliance promptly objected. In other words, Alliance raised its objection at the first available opportunity, and it is therefore not waived. *See* 36 C.F.R. § 218.8(c).

## C.

Having concluded that Alliance may raise this claim, we turn to the Access Amendments, including their historical

---

[13] Defendants' arguments to the contrary are unavailing. Although there was a map containing the relevant information in the agency record (made available to the public at the Libby, Montana ranger station at the time of publishing the Draft Environmental Impact Statement), there was nothing in the Draft Environmental Impact Statement that would have alerted a reader to the existence of the map. Furthermore, it would have been erroneous to incorporate that map by reference; at a minimum, the map should have been included in the Draft Environmental Impact Statement appendix. *See* 40 C.F.R. § 1502.18(a)–(b); 46 Fed. Reg. 18026-01, 18034 (Mar. 23, 1981). To the extent Defendants argue that some obscure combination of maps and tables in the Draft Environmental Impact Statement and its appendix would have put Alliance on notice, we have reviewed those materials, find them lacking, and reject the argument. In short, it is a futile task to attempt to divine, from those documents, the aspect of the Project to which Alliance objects.

development. The FWS has taken certain actions to conserve Cabinet-Yaak grizzly bears as they face extinction. *See* 64 Fed. Reg. 26725-01, 26732 (May 17, 1999) (the FWS concluding that Cabinet-Yaak grizzly bears "are in danger of extinction"). In 1993, the FWS promulgated the Grizzly Bear Recovery Plan ("Recovery Plan") that designates "recovery zones" in the Kootenai National Forest where "there is a significant likelihood of grizzly bear presence." *All. for the Wild Rockies v. Bradford*, 856 F.3d 1238, 1240 (9th Cir. 2017) ("*Bradford*"). "The Recovery Plan prescribes forest management measures within these zones to protect grizzly bears and to facilitate their survival and reproduction." *Id.* Among the recovery zones is the Cabinet-Yaak recovery zone, for which the Recovery Plan set a goal of restoring the population to at least one-hundred bears.[14]

In addition to "recovery zones," the Recovery Plan "also designates areas outside the recovery zones that grizzly bears sometimes frequent, called 'Bears Outside of Recovery Zones' or 'BORZ polygons' . . . [and] prescribes less protective management measures in BORZ polygons than in recovery zones." *Id.* Although less protective, the protections in BORZ polygons are still meaningful.

Among the protections applicable in BORZ polygons are those found in the Access Amendments,[15] which the Forest

---

[14] *See* http://www.nps.gov/noca/upload/Grizzly_bear_ recovery_plan.pdf, at 83 (last visited April 12, 2017).

[15] The full title for the Access Amendments is "Motorized Access Management within the Selkirk and Cabinet-Yaak Grizzly Bear Recovery Zones." *See Bradford*, 856 F.3d at 1240. The Access Amendments modified the Kootenai Forest Plan; as provided in the Access Amendments, they amended "the objectives, standards, and guidelines that

Service developed in consultation with the FWS, and which "establish[] motorized-vehicle access restrictions in recovery zones and BORZ polygons." *Id.* As explained in the Access Amendments, restricting motorized-vehicle access "minimiz[es] human interactions and potential grizzly bear mortality, reduc[es] displacement from important habitats, and minimiz[es] habituation to humans." In furtherance of these goals, the Access Amendments establish a "baseline" cap on the total linear road miles in each BORZ polygon, and prohibit any net increase in permanent roads beyond the applicable baseline. *See id.* at 1241.

**D.**

A portion of the Project area overlaps with part of the Tobacco BORZ polygon (the "overlapping area"), in which Cabinet-Yaak grizzly bears are sometimes found. The baseline road mileage for the Tobacco BORZ polygon was calculated in 2009, and amounts to 1,123.9 linear miles.

The Project contemplates a range of road-related activities within the overlapping area, including constructing new roads, decommissioning both National Forest and "undetermined" roads, and assigning road numbers to "undetermined" roads to incorporate them into the National Forest road system.[16] In an attempt to satisfy the Access

---

address grizzly bear management within the Selkirk and Cabinet-Yaak recovery zones."

[16] The "Data Dictionary" for the Forest Service travel system provides the following definition of "undetermined" road:

Amendments' mandate that road mileage shall not increase beyond the baseline, the Forest Service conducted a survey of existing roads, including "undetermined" roads, in the overlapping area. It then concluded that because the Project would not increase the road mileage in the overlapping area beyond the existing condition, it would not increase the linear road mileage within the Tobacco BORZ polygon.

In particular, the Forest Service concluded that its construction of 2.2 miles of new road would be more than off-set by decommissioning 0.65 miles of National Forest road and 1.84 miles of "undetermined" road, and that the assignment of road numbers to 2.6 miles of "undetermined" road would have no effect because those roads were already existing. Based on these calculations, the Forest Service concluded that the net effect of the Project would be a reduction of 0.3 miles of road in the Tobacco BORZ polygon ($2.2 - 0.65 - 1.84 = -0.3$). The FWS concurred in the Forest Service's conclusion.

---

**Unauthorized Road or Trail.** A road or trail that is not a forest road or trail or a temporary road or trail that is not included in a forest transportation atlas.

Unauthorized roads are categorized into two types and recorded in the SYSTEM linear event in the Infra Travel Routes database. The two types are:

[1.] **Undetermined.** Roads whose long term purpose and need has yet to be determined, and

[2.] **Not Needed.** Roads not needed for long-term management of national forest resources as determined through an appropriate planning document.

(citations omitted).

**E.**

The Forest Service's analysis was plainly insufficient. The Access Amendments are unequivocal: the Forest Service must examine whether a proposed project will result in road mileage within the BORZ polygon that exceeds the Access Amendments baseline established for that BORZ polygon. The Forest Service did not conduct that analysis. It instead conducted a survey of the roads existing in the overlapping area at the time of the Project proposal (in 2011), and analyzed the effects of the Project on its own measurement. The Forest Service never assessed the impact of the Project on the 1,123.9 linear mile baseline condition of the Tobacco BORZ polygon. In other words, the Forest Service's "failure to measure [linear road miles] as defined by the [Access Amendments] renders us unable to determine from the record that the agency is complying with the forest plan standard." *Hapner v. Tidwell*, 621 F.3d 1239, 1250 (9th Cir. 2010) (internal quotation marks omitted).

We recognize that, in some circumstances, it would be possible for the Forest Service to comply with the Access Amendments by measuring the impact of the project on existing roads—but only if the Forest Service additionally determined that the existing roads were included in the Access Amendments baseline measurement. Here, the Forest Service did not determine whether the existing roads it measured (most notably, whether the particular "undetermined" roads it measured), were included in the baseline. Absent such a determination, it is impossible to determine whether the Project will result in an increase in road mileage.

An examination of the record in this case reveals the problem with the Forest Service's failure to make this necessary determination. To justify the addition of 2.2 miles of new permanent road, the Forest Service relied on the decommissioning of 1.84 miles of "undetermined" road and the decommissioning of 0.65 miles of National Forest road. If, however, as Alliance argues, "undetermined" roads were not included in the Access Amendments baseline calculation in the first place, it would be illogical to offset the 2.2 miles of new road construction with the decommissioning of 1.84 miles of "undetermined" road.[17] The fact that we do not know whether the "undetermined" roads at issue were included in the Access Amendments baseline calculation is precisely the problem. Without such information, we cannot determine whether the Forest Service complied with the Access Amendments.

The district court agreed that it is impossible to determine, with certainty, whether the "undetermined" roads at issue were included in the baseline calculation. *All. for the Wild Rockies*, 209 F. Supp. 3d at 1192–94. Nonetheless, the district court concluded that some circumstantial evidence supported a finding that such roads were included in the baseline, and therefore granted summary judgment to Defendants. *Id.* at 1193–94. The district court's conclusion misses the point. The Forest Service committed clear error in its analysis by failing to specify that the existing undetermined roads were included in the Access Amendments baseline calculation, and thus failed to provide

---

[17] Likewise, if the 2.6 miles of "undetermined" road that the Project seeks to incorporate into the National Forest road system was not included in the Access Amendments baseline calculation, its incorporation will result in a net *increase* of road mileage.

ALLIANCE FOR THE WILD ROCKIES V. SAVAGE     23

a cogent explanation for its conclusion that the Project complies with the Access Amendments. *See Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1124 (9th Cir. 2012) ("We cannot gloss over the absence of a cogent explanation by the agency by relying on the post hoc rationalizations offered by defendants in their appellate briefs.") (quoting *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1049 (9th Cir. 2010)). Moreover, the error cannot be treated as harmless in light of the ambiguity in the record as to whether the "undetermined" roads at issue were, in fact, included in the Access Amendments baseline calculation.[18]

In sum, the Forest Service's failure to analyze whether the Project will increase the total linear miles of permanent roads within the Tobacco BORZ polygon beyond the baseline does not satisfy the plain terms of the Access Amendments and was therefore arbitrary and capricious. *See Native*

---

[18] Although a non-exhaustive list, we highlight three problems with the evidence to illuminate the ambiguity in the record. First, because "undetermined" is a sub-category of "unauthorized" roads, it is possible that the particular undetermined roads at issue in this case were created—without authorization from the Forest Service—in the interim between the measurement of the Access Amendments baseline and the Forest Service's survey of existing roads for the Project. Second, the definition of "undetermined" roads indicates that it is a term that refers to both temporary and permanent roads, but the Access Amendments are concerned solely with permanent roads, which suggests that some (or all) of the undetermined roads would not have been included in the baseline. Third, the definition of "undetermined" roads indicates that such roads are included in one database (the SYSTEM linear event in the Infra Travel Routes database), but not in another database (the forest transportation atlas). We do not know which database—whether one of the two provided in the definition, or some other database—the Access Amendments baseline calculation relied upon.

*Ecosystems Council*, 418 F.3d at 962–64; *see also Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1018 (9th Cir. 2012) ("A court will conclude that the Forest Service acts arbitrarily and capriciously . . . when the record plainly demonstrates that the Forest Service made a clear error in judgment in concluding that a project meets the requirements of the . . . relevant Forest Plan.") (internal quotation marks omitted). Likewise, the FWS's concurrence in a proposed action that fails to satisfy the Access Amendments was arbitrary and capricious. On this claim, we therefore reverse the district court's denial of summary judgment to Alliance and grant of summary judgment to Defendants. The district court shall remand this issue to the Forest Service for further proceedings consistent with this opinion. *See Native Ecosystems Council*, 418 F.3d at 965–66.

## IV. Conclusion

We hold that Alliance was entitled to summary judgment on its claims that, in approving the East Reservoir Project, the Forest Service and the FWS acted arbitrarily and capriciously by failing to determine whether the East Reservoir Project will result in road mileage within the Tobacco BORZ polygon that exceeds the baseline cap provided by the Access Amendments. With regard to Alliance's Cabinet-Yaak grizzly bear claim, the district court shall remand the issue to the Forest Service for proceedings consistent with this opinion. With regard to Alliance's lynx reconsultation claim, we vacate the part of the district court's summary judgment order that addresses this claim, Dist. Ct. Dkt. No. 67, pages 24–35; *All. for the Wild Rockies*, 209 F. Supp. 3d at 1194–99,

and remand with instructions to dismiss the reconsultation claim as moot. The injunction previously issued by this court is vacated.

**REVERSED and REMANDED in part; VACATED and REMANDED in part.**

The parties shall bear their own costs on appeal.