IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED
MAR 25 2019
Clerk, U.S. Courts
District Of Montana
Missoula Division

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER SAVAGE, Kootenai National Forest Supervisor, FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and UNITED STATES FISH & WILDLIFE SERVICE, an agency of the U.S. Department of the Interior, <br><br> Defendants, <br> and <br><br> KOOTENAI FOREST STAKEHOLDER COALITION, a Montana Corporation, and LINCOLN COUNTY, a political subdivision of the State of Montana, <br><br> Defendant-Intervenors. | CV 15–54–M–DLC <br><br> ORDER |

Before the Court is Plaintiff Alliance for the Wild Rockies's Motion to

Vacate Record of Decision. (Doc. 93.) The motion is opposed by the Federal

-1-

Defendants,[1] the Defendant-Intervenors, and Amici the State of Montana and the Kootenai Tribe of Idaho. (Docs. 104, 105, 107, & 108.) Because this case presents the "rare circumstances" justifying remand without vacatur, the Plaintiff's motion will be denied. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

## BACKGROUND

Plaintiff Alliance for the Wild Rockies ("Alliance") brought this lawsuit in 2015 to enjoin implementation of the East Reservoir Forest Restoration Project (the "Project"). The Project affects 92,407 acres southeast of Libby, Montana, along the east shore of Lake Koocanusa Reservoir. The Project area includes 18,428 acres of the Tobacco Bears Outside the Recovery Zone ("BORZ") polygon. The Forest Service monitors the fairly significant grizzly bear activity within the Tobacco BORZ, and it imposes greater restrictions on use in light of that activity.[2]

Alliance initially brought five claims for relief, alleging errors arising from: (1) noncompliance with standards regarding lynx and lynx habitat; (2) proposed road activity within the Tobacco BORZ; (3) the Project's unknown effect on bull

---

[1] The Federal Defendants include the United States Forest Service, the United States Fish and Wildlife Service, and individuals named in their capacity within those two agencies. Throughout this Order, the Federal Defendants are collectively referred to as the "Forest Service."

[2] "BORZ" is a term of art used by the Forest Service to describe regions outside of designated grizzly bear recovery zones where grizzly bear activity is monitored. The acronym originated in FWS's 1993 Grizzly Bear Recovery Plan, which sets forth the protective measures to be applied within BORZ polygons, as well as the more stringent protections for designated recovery zones. *All. for the Wild Rockies v. Savage*, 897 F.3d 1025, 1034 (9th Cir. 2018).

-2-

trout; (4) failure to conduct a cumulative-effects analysis of amendments to the relevant forest plan; and (5) inadequacy of the overall road density analysis. Alliance eventually withdrew claim (4). In July 2016, following a hearing on the parties' cross-motions for summary judgment, the Court issued an order granting in full the Federal Defendants' and the Defendant-Intervenors' motions for summary judgment. Alliance appealed from that order as to issues (1) and (2).

First, Alliance argued on appeal that the Forest Service violated the Administrative Procedure Act ("APA") in determining the Project's impact on lynx and lynx habitat. The Ninth Circuit found—and both parties agreed—that further administrative proceedings mooted lynx-related claim, and it instructed this Court to vacate that part of its summary judgment order on remand. The Court now vacates the portion of its earlier order discussing this issue and dismisses Alliance's lynx-related claim as moot.

Second, and relevant to the pending motion, Alliance appealed this Court's determination that the Forest Service did not violate the APA in authorizing road construction within the Tobacco BORZ. On this issue, the Ninth Circuit reversed this Court's summary judgment order, holding that the Forest Service acted arbitrarily and capriciously by failing to fully consider the impact of existing roads on its baseline calculation of BORZ road mileage. *All. for the Wild Rockies v. Savage*, 897 F.3d 1025 (9th Cir. 2018).

At issue here is solely whether this Court, in complying with the Ninth Circuit's instruction to remand this issue to the Forest Service, should vacate the operative Record of Decision ("ROD"). Because the Forest Service's error did not permeate the Project and can be remedied more quickly absent vacatur, and because the equities favor the Forest Service, the Court remands without vacatur.

## DISCUSSION

Alliance advocates for remand with vacatur and dismissal of this case, contending that judicial economy and the policy underlying the Endangered Species Protection Act ("EPA") counsel in favor of vacating the Record of Decision. The Court disagrees. Although remand without vacatur is appropriate only in "limited circumstances," those circumstances are presented here. *Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012) (per curium).

The APA provides that courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not accordance in law." 5 U.S.C. § 706(2) & (2)(A). "Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995). Thus, "vacatur of an unlawful agency action normally accompanies a remand." *All. for the Wild Rockies v. U.S. Forest Service*, 907 F.3d 1105, 1121 (9th Cir. 2018). However, "[w]hen equity demands, . . . the regulation

can be left in place while the agency reconsiders or replaces the action, or to give the agency time to follow the necessary procedures." *Id.*

The decision of whether to vacate is "controlled by principles of equity." *Id.*, quoting *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995)). In determining the appropriate remedy, the Court must "weigh the seriousness of the agency's errors against 'the disruptive consequences'" of vacatur. *Pollinator Stewardship Council v. U.S. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Here, the agency's error is limited in scope and severity, and vacatur would result in a disproportionate disruption to the Project, which has largely withstood Alliance's legal challenge. Thus, the circumstances of this case justify the relatively rare remedy of remand without vacatur.

**I.     The Seriousness of the Error**

The Court must first consider "the seriousness of the agency's errors." *Id.* Under the National Forest Management Act ("NFMA"), the Project must comply with the provisions of the Kootenai National Forest Plan (the "Forest Plan"). 16 U.S.C. § 1604(i) ("Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans."). Relevant here, the Access Amendments, which were incorporated into the Forest Plan in 2011, limit allowable road mileage within the

Tobacco BORZ. Specifically, the Access Amendments prohibit the construction of roads within the Tobacco BORZ above a set baseline of 1,124.7 miles. (Doc. 105-2 at 4.)

The Forest Service's error arose from its determination that the Project was consistent with the Access Amendments because it would reduce the total miles of road within the Tobacco BORZ. While some new road would be added, other roads would be decommissioned, resulting in a net reduction of 0.3 miles. However, the Forest Service merely "analyzed the effects of the Project on its own measurement"; it "never assessed the impact of the project on the . . . baseline condition of the Tobacco BORZ polygon." *Savage*, 897 F.3d at 1035. Most significantly, it was unclear whether so-called "undetermined" roads—the decommissioning of which was used to offset new road construction—had been factored into the Tobacco BORZ baseline. *Id.* at 1036. If the undetermined roads were not considered in setting the baseline, the Project could result in an increase in road mileage within the BORZ. Thus, the Forest Service failed to comply with the Access Amendments, in violation of NFMA.

The parties dispute the seriousness of the error. Alliance contends that a failure to comply with a forest plan is necessarily serious, warranting vacatur absent extraordinary circumstances. (Docs. 94 at 17–23; 109 at 6–8.) The Forest Service argues that its NFMA error does not affect the Project as a whole and can

-6-

be remedied relatively quickly (Doc. 105 at 13–21), a position echoed by the Intervenor-Defendants (Doc. 104 at 5 (classifying error as "a failure to explain rather than an error in judgment")) and Amicus the Kootenai Tribe of Idaho (Doc. 108 at 3 (discussing "simple and discrete technical issue on remand—basically a math problem")).

The Forest Service has the better argument. While it may be misleading to classify a violation of law as anything less than "serious," the error is certainly limited in scope. The Forest Service's erroneous analysis regarding road-related activities within the Tobacco BORZ does not compromise the integrity of the Project as a whole. Of the 92,547 acres in the Project area, 74,119 acres fall outside the Tobacco BORZ. (Doc. 105 at 7–8.) Thus, activities in 80% of the Project area are necessarily unaffected by the Forest Service's NFMA error. Additionally, the Project entails work within the Tobacco BORZ that does not demand road construction or reclassification. The error does not call the legality of that work into question. Again, Alliance raised a number of broad claims for relief in its motion for summary judgment, and it did not win on those claims. The Forest Service's error, like the issue discussed in this Order, is well-cabined.

In addition to its limitation in geographical scope, the error does not threaten the overall integrity of the Project. The failure to analyze road mileage under the Access Amendments is a relatively simple failure of accounting and not a failure of

understanding. If the Forest Service can verify that the total number of road miles will fall under the baseline, it may proceed with its road-related activities within the BORZ. The 4.44 total miles of "undetermined" roads that proved fatal to the Forest Service's NFMA analysis are unlikely to present a substantial obstacle to implementation of the Project; indeed, as the Forest Service points out, the BORZ's total road mileage is nearly 20 miles below the baseline, providing a comfortable cushion on remand. *See Pollinator Stewardship Council*, 806 F.3d at 532 ("We have also looked at whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand.").

## II. The Consequences of Vacatur

The Court must consider "the disruptive consequences" of vacating a rule rather than remanding for correction of an identified defieciency. *Cal. Cmties. Against Toxics*, 688 F.3d at 992 (quotation omitted). Here, vacatur is likely to cause immediate economic harm and would threaten the health of the forest ecosystem. When considered alongside the limited scope and technical nature of the Forest Service's error, the equities favor remand without vacatur.

The Project's economic impact is relevant to the question of whether to vacate on remand. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010).

-8-

Considering only the four previously awarded timber sales falling strictly outside of the Tobacco BORZ, the Forest Service estimates that the projected activities "will reforest and restore 772 acres of Forest Service land, abate hazardous fuel on 885 acres, treat 320 acres for noxious weeds, and maintain 58 miles of road." (Doc. 105 at 25.) These four sales "are expected to generate more than $555,000 in revenue," 80 percent of which will be earmarked for reforestation and forest improvement work within the forest. (Doc. 105 at 25.) The sales will also be a boon to private business—more particularly, local and small business—and to consumers. (Doc. 105 at 27–28.) Similarly, the High Five sale within the Tobacco BORZ does not require any road construction or reclassification, and it is anticipated to bring in over $1 million in revenue. Other sales with similar economic benefit are in the works.

More pressingly, the Project will decrease the likelihood and severity of wildfire, which threatens local communities and the forest ecosystem. Over 8,000 acres of the Project area falling outside the Tobacco BORZ is designated as Wildland Urban Interface, and the Project prioritizes hazardous fuel reduction treatment in high-risk areas. (Doc. 105 at 28–29.) Amicus the State of Montana effectively amplifies the Forest Service's position regarding fire mitigation. (Doc. 107 at 3–4.) For example, Montana points out that asbestos contamination in and around Libby, Montana translates to the potential fire-related "dispersal of airborne

asbestos in smoke and convection columns throughout the Kootenai River and Flathead Valleys," which could then "be trapped by weather inversions for extended periods." (Doc. 107 at 7–8.) In addition to the devastating effects of wildfire on the land, animals, individuals, and property directly affected, fire imposes enormous costs on agencies, including the Montana Department of Natural Resources, that respond to active wildland fires. (Doc. 107 at 4–8.) If the Court orders vacatur, important wildland fire mitigation work will be delayed, threatening the vitality of the forest ecosystem, the resources of responding agencies, and the safety and health of those who live in and around the Project area.

Further, as the Kootenai Tribe of Idaho points out, the Project area has been substantially degraded by "misguided" historical forest management practices, and intervention is necessary "to reestablish forest conditions that are more resistant and resilient to disturbances" and "to create a varied landscape that will sustain species of importance to both Tribal and non-Tribal peoples." (Doc. 108 at 4–5.) The Tribe, which was heavily involved in the consultation process, represents that the Project will make for a healthier forest and better conditions for species, including the grizzly bear. In its view, "ecological restoration within the Project area should start sooner rather than later." (Doc. 108 at 5.) The Court agrees.

On balance, the Forest Service's error does not justify the significant delay, expense, and inconvenience that would result from vacatur. *See Cal. Cmties. Against Toxics*, 688 F.3d at 993 (remanding without vacatur where "[t]he delay and trouble vacatur would cause are severe"); *Greenpeace v. Cole*, 50 F. Supp. 3d 1158, 1170 (D. Alaska 2014) ("Providing explanation and analysis demonstrating consistency and compliance with the . . . Forest Plan, if possible, would be just as permissible to correcting the error as vacatur and a new decisionmaking process, but would be less time and resource intensive."). "[V]acatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *All. for Wild Rockies v. Marten*, CV 17–21–M–DLC, 2018 WL 2943251, at *3 (D. Mont. June 12, 2018) (internal quotation marks and citation omitted).

Courts "should aim to ensure the framing of relief no broader than required by the precise facts." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000) (internal quotation marks and citation omitted). Often, vacatur is necessary to avoid judicial interference with executive functions; the Court cannot rewrite a faulty rule or supply new reasoning for the agency's rule, for example. *See Fla. Power & Light Co*, 470 U.S. at 744 ("If the record before the agency does not support the agency action . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, a more tailored remedy is both available and appropriate.

-11-

The Court accordingly remands without vacatur. Before constructing any new roads or converting previously undetermined roads in the Tobacco BORZ, the Forest Service must determine that its proposed activities comport with the Forest Plan, including the Access Amendments. In the meantime, it may carry out those Project activities that do not involve the construction or reclassification of roads inside the BORZ.

Accordingly, IT IS ORDERED that the Court's order of July 19. 2016 is VACATED in part. The Order is vacated as to the Plaintiff's lynx-related claim. That claim is DISMISSED as moot.

IT IS FURTHER ORDERED that the Plaintiff's motion (Doc. 93) for vacatur is DENIED.

IT IS FURTHER ORDERED that the Project is remanded to the United States Forest Service as it relates to the construction and reclassification of roads within the Tobacco BORZ polygon. On remand, the Forest Service shall appropriately analyze the effect of anticipated road-related activities pursuant to the standards set forth in the Forest Plan, including the Access Amendments. Unless and until the NFMA violation identified by the Ninth Circuit Court of Appeals is corrected, no roads shall be built within the Tobacco BORZ, and no undetermined roads shall be reclassified.

DATED this 25th day of March, 2019.

Dana L. Christensen, Chief Judge
United States District Court