Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, P.C.
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, <br><br>         Plaintiff, <br> vs. <br><br> CHRISTOPHER SAVAGE, Kootenai National Forest Supervisor, FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and UNITED STATE FISH & WILDLIFE SERVICE, an agency of the U.S. Department of the Interior, <br><br>         Defendants. | CV- 15-54-M-DLC <br><br> BRIEF IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MOTION FOR ATTORNEY FEES |

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Supplemental attorney fees are warranted for the hours incurred on the

        motion to vacate; although the Court did not vacate the underlying

        decision, it granted injunctive relief, thereby requiring Defendants to do

        something "they otherwise would not have had to do.'"  . . . . . . . . . . 3

    B.  Supplemental attorney fees are warranted for the hours incurred on this

        supplemental fee motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  The hours expended in this case are reasonable; all claims were related to

        the same course of conduct - the approval of the East Reservoir

        Project.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.  The rates requested are reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.,*

  532 U.S. 598 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

*Comm'r, I.N.S. v. Jean,* 496 U.S. 154 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Higher Taste, Inc. v. City of Tacoma,* 717 F.3d 712 (9th Cir. 2013). . . . . . . . . . . . 3

*Ibrahim v. U.S. Dep't of Homeland Sec.,*

  912 F.3d 1147 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 11

*Love v. Reilly,* 924 F.2d 1492 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Moreno v. City of Sacramento,* 534 F.3d 1106 (9th Cir. 2008). . . . . . . . . . . . . . . 10

*Native Ecosystems Council v. Krueger,* 2019 WL 1489839 (D. Mont. 2019). . 9, 12

*Perkins v. Mobile Housing Board,* 847 F.2d 735 (11th Cir. 1988) . . . . . . . . . . . . 10

*Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency,*

  2017 WL 3096105 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.,*

  574 F.3d 1054 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Real Prop,* 190 F.3d 977 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . 6

*Vogel v. Harbor Plaza Ctr., LLC,* 893 F.3d 1152 (9th Cir. 2018). . . . . . . . . . . . . . 3

*Watson v. Riverside,* 300 F.3d 1092 (9th Cir. 2002). . . . . . . . . . . . . . . . 3, 9, 11, 13

*Wood v. Burwell,* 837 F.3d 969 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

STATUTES

16 U.S.C. § 1540(g)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. § 2412 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

## I.  INTRODUCTION

Plaintiff Alliance for the Wild Rockies hereby files this supplemental motion for attorneys' fees and other expenses under the Equal Access to Justice Act (EAJA) and/or Endangered Species Act (ESA) fee provision.  28 U.S.C. § 2412(d); 16 U.S.C. § 1540(g)(4).  Plaintiff filed its original motion for attorneys' fees on September 21, 2018 in the Ninth Circuit.  Upon Plaintiff's motion, the Ninth Circuit transferred the fee motion to this Court, and the motion was refiled in this Court on September 26, 2018.  Doc. 92.  Pursuant to the parties' request, briefing on the fee motion was stayed by this Court's Order while a separate vacatur motion was pending.  Doc. 97.  Pursuant to that Order, Plaintiff must file its supplemental fee motion within 14 days of the Court's Order on the vacatur motion.  Doc. 97.  This Court filed an Order, denying vacatur but granting injunctive relief, on March 25, 2019.  Doc.  111.  Therefore, Plaintiff's supplemental fee motion is due by today, April 8, 2019.

In this supplemental fee motion, Plaintiff requests additional fees incurred since the filing of the original fee motion, including hours expended on the motion to vacate and this supplemental fee motion.  Additionally, pursuant to the EAJA rate update posted online by the Ninth Circuit, Plaintiff updates the 2018 EAJA rate for hours expended in 2018 and 2019 on the fee motion.  As set forth below, with these additions and updates, Plaintiff now requests $127,917.34 in attorney fees for

Rebecca Smith, $70,426.94 in attorney fees for Tim Bechtold, $7,906.49 in attorney fees for Talasi Brooks, $1,982.69 in non-taxable costs/expenses, and $3,092.50 in expert witness fees, for a grand total of $211,325.96.  Pursuant to this Court's Order, if no fee settlement is reached, Defendants will file their response to the original and supplemental fee motions within 30 days, by May 8, 2019.  *See* Doc. 97.

## II.  ARGUMENT

Plaintiff moves for costs including attorney fees pursuant to the ESA, which authorizes an award of a plaintiff's litigation costs, including attorneys' fees, if the court determines such an award is "appropriate."  16 U.S.C. § 1540(g)(4). Alternatively, or in addition, Plaintiff moves for fees and other expenses under EAJA, which authorizes an award of attorneys' fees and other expenses for a "prevailing party."  28 U.S.C. § 2412 (d)(1).

As set forth more fully in Plaintiff's original fee motion, Plaintiff was the "prevailing party" on all claims litigated on appeal.  Doc. 92 at 2-8.  Plaintiff was the "prevailing party" on the ESA claim regarding lynx because the Ninth Circuit issued a preliminary injunction pending appeal for this claim, which lasted for almost two years, and remained in place until the claim was rendered moot and dismissed as part of the Ninth Circuit's Opinion.  As part of its Opinion, the Ninth Circuit also ordered that the district court order be vacated regarding this claim.  *See*

Doc. 92 at 2-8; *see Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715–19

(9th Cir. 2013); *Watson v. Riverside*, 300 F.3d 1092, 1094-96 (9th Cir. 2002).

Additionally, the Ninth Circuit reversed this Court and granted summary

judgment in Plaintiff's favor on the NFMA claim and related ESA consultation

claim regarding grizzly bears.  *See* Doc. 92 at 2-8.  An enforceable judgment on the

merits of these claims renders Plaintiff the prevailing party on these claims.

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*,

532 U.S. 598, 604 (2001); *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158

(9th Cir. 2018).

Attorneys' fees, costs, and other expenses incurred prior to September 21,

2018 are addressed in Plaintiff's original fee motion.  Below, Plaintiff addresses

attorneys' fees incurred since September 21, 2018.  In sum, attorneys' fees incurred

regarding the motion to vacate and this supplemental fee motion are compensable,

and the rates requested and hours incurred are reasonable.

**A.  Supplemental attorney fees are warranted for the hours incurred on the motion to vacate; although the Court did not vacate the underlying decision, it granted injunctive relief, thereby requiring Defendants to do something "they otherwise would not have had to do."'**

On March 25, 2019, this Court denied Plaintiff's request to vacate the

underlying decision in this case, but granted an injunction against the activities

affected by the legal violations in this case:

> IT IS FURTHER ORDERED that the Project is remanded to the
> United States Forest Service as it relates to the construction and
> reclassification of roads within the Tobacco BORZ polygon. On
> remand, the Forest Service shall appropriately analyze the effect of
> anticipated road-related activities pursuant to the standards set forth in
> the Forest Plan, including the Access Amendments.  Unless and until
> the NFMA violation identified by the Ninth Circuit Court of Appeals is
> corrected, no roads shall be built within the Tobacco BORZ, and no
> undetermined roads shall be reclassified.

Doc. 111 at 12.[1]  This order constitutes a "a judicially-sanctioned material alteration

in the parties' relationship because 'the defendants were required to do something

directly benefitting the plaintiff[ ] that they otherwise would not have had to do.'"

*Wood v. Burwell*, 837 F.3d 969, 973–74 (9th Cir. 2016) (citation omitted).

Therefore, Plaintiff is a prevailing party both because the Ninth Circuit ordered that

summary judgment be entered in Plaintiff's favor on the grizzly bear claims under

NFMA and the ESA, and because this Court has issued injunctive relief for this

claim.

In *Wood*, the Ninth Circuit expressly rejected the government's argument that

the district court's refusal to vacate the underlying decision stripped away prevailing

party status:

> the government points to two factors that it contends alter the

---

[1]Although the Court's Order explicitly mentions only the NFMA violation;
Plaintiff notes here that the Ninth Circuit Opinion also found that the ESA
consultation for grizzly bear for the Project was arbitrary and capricious.  Therefore,
this injunctive relief addresses both the NFMA claim for grizzly bears as well as the
ESA claim for grizzly bears.

> prevailing party analysis: . . . (2) the *district court remanded to the agency without vacatur*, while retaining jurisdiction. We disagree with the government's claim that this "procedural posture made all the difference."  Because the posture of this case did not fundamentally affect the prevailing party inquiry set out in *Buckhannon*, we conclude that *the district court erred as a matter of law in holding that the Wood plaintiffs were not a prevailing party*.

*Id* (emphases added).

Furthermore, the Ninth Circuit holds that if a plaintiff receives relief that serves the "goals of the claim," even if the relief is different than the precise relief requested, the plaintiff is a prevailing party:

> To achieve such relief, a plaintiff must receive *some actual relief that serves the goals of the claim* in his or her complaint. As explained below, the relief achieved *need not be of precisely the same character as the relief sought* in the complaint, but it must require defendants to do something they otherwise would not have been required to do.
> . . .
> The threshold for sufficient relief to confer prevailing party status is not high.

*Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009).

Accordingly, here, as in *Wood*, this Court's Order declining to vacate the underlying decision is not determinative regarding the prevailing party inquiry.  837 F.3d 969, 973–74.  Nor is it determinative that Plaintiff requested remand with vacatur, and instead received a remand with injunctive relief.  *Saint John's Organic Farm*, 574 F.3d at 1059.  Instead, the question under *Wood*, *Saint John's*,  and

*Buckhannon* remains whether "the defendants were required to do something directly benefitting the plaintiff[ ] that they otherwise would not have had to do." *Wood*, 837 F.3d at 973–74.  Both the Ninth Circuit's Opinion ordering that final judgment be entered in Plaintiff's favor on the NFMA and ESA claims regarding the grizzly bear, and this Court's Order providing a remand with injunctive relief, require a change in Defendants' conduct that they "otherwise would not have had to do" and therefore result in prevailing party status for Plaintiff at both stages.  *Id.* Therefore, the hours expended by Plaintiff on the motion to vacate are compensable.

**B.  Supplemental attorney fees are warranted for the hours incurred on this supplemental fee motion.**

The time spent by prevailing parties on their fee petitions is fully compensable under EAJA.  *See Love v. Reilly*, 924 F.2d 1492, 1497 (9th Cir. 1991); *United States v. Real Prop*, 190 F.3d 977, 985 (9th Cir. 1999) ("Claimants are entitled to fees for those hours reasonably spent on . . . fee litigation").  As the Supreme Court has held:  "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163–65 (1990)  Thus, "[i]f the Government could impose the cost of fee litigation on prevailing parties . . . the financial deterrent that the EAJA aims to eliminate would be resurrected. The Government's general interest in protecting the federal fisc[] is subordinate to the

specific statutory goals of encouraging private parties to vindicate their rights . . . ."

*Id.* Accordingly, the time spent on this supplemental fee motion is compensable.

## C. The hours expended in this case are reasonable; all claims were related to the same course of conduct - the approval of the East Reservoir Project.

The Ninth Circuit recently issued an *en banc* opinion to clarify the

circumstances when attorneys may be compensated for "related" but "unsuccessful"

claims:

> Construing the *Hensley* Court's statement that claims are "unrelated" if
> they are "entirely distinct and separate" from the prevailing claims, we
> have held that "related claims involve a common core of facts *or* are
> based on related legal theories." []. We do not require commonality of
> *both* facts *and* law to conclude that claims are related. [] Rather "the
> focus is to be on whether the unsuccessful and successful claims arose
> out of the same 'course of conduct.' If they didn't, they are unrelated
> under *Hensley*." [].
> . . .
> All of Dr. Ibrahim's claims arose from a "common course of conduct"
> and are therefore related under *Hensley*. []. The First Amended
> Complaint at bottom was a challenge to "defendants' administration,
> management, and implementation of the 'No-Fly List.' "
> . . .
> There is no question that all of these claims arise from the
> government's common course of conduct toward Dr. Ibrahim. To hold
> otherwise would ignore the realities of lawyering. . . . The fact that one
> claim or theory is eventually determined to be true does not mean that
> the claims were unrelated to one another.
>
> Allowing hindsight to creep in to fee awards also would put lawyers in
> an untenable ethical position. Res judicata bars claims that could have
> been raised in an earlier litigation that arise out of the same
> "transactional nucleus of facts." []. Ethical obligations—or perhaps
> more likely, the specter of malpractice liability—thus require a lawyer
> to bring all reasonably related, viable claims in a single action.  But the

three-judge panel's "mutually exclusive" rule raises the possibility that some fraction (perhaps a substantial one) of these reasonably related, ethically compelled claims, which a lawyer must research and litigate, will be excluded from a fee award.

Dr. Ibrahim's lawyers may have violated their ethical duties and risked malpractice if they had failed to bring all claims that their client could present in good faith. See Model Rules of Prof'l Conduct r. 1.3 cmt. (Am. Bar Ass'n 2016) ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.").
. . .
Applying the correct "common course of conduct" test to Dr. Ibrahim's claims . . . we conclude that Dr. Ibrahim meets the first prong of *Hensley*. All of Dr. Ibrahim's claims arose from her wrongful placement on the No Fly list, and are therefore related.   Fees for each of these claims are thus recoverable.

*Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174–77 (9th Cir.

2019)(en banc)(citations omitted).

This Court recently reached a similar conclusion:  "The Supreme Court has

expressly rejected the argument that simply because a plaintiff raises alternate

theories—and does not prevail on each and every one—does not mean that a

plaintiff cannot recover legal fees in relation to the time it spent developing and

briefing those alternate theories."  *Native Ecosystems Council v. Krueger*, 2019 WL

1489839, at *3 (D. Mont. 2019).  Moreover: "each of Plaintiffs' claims are related

because they share 'a common core of facts or are based on related legal theories.'

[] Plaintiffs' claims contain a common core of facts because they allege improper

8

compliance with various environmental laws in the Forest Service's authorization of the Plan and Project." *Id.* (citations omitted).

Likewise in this case, all of Plaintiff's claims arose from a "common core of facts because they allege improper compliance with various environmental laws in the Forest Service's authorization of the Plan and Project" at issue in this case. *See id.* All claims "are therefore related. Fees for each of these claims are thus recoverable." *Ibrahim*, 912 F.3d at 1174–77.

In support of this motion, Plaintiff files supplemental declarations documenting the additional hours Plaintiff's counsel have expended in obtaining injunctive relief in this case, and filing this supplemental fee motion regarding these related claims. The hours expended were reasonable and necessary and not excessive. Supplemental Declaration of Rebecca K. Smith (April 8, 2019) ¶¶ 10-11; Supplemental Declaration of Timothy M. Bechtold (April 8, 2019) ¶¶ 12-14.

Regarding the number of hours reasonably expended, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time [s]he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Counsels' "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required." *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).

Finally, in *Ibrahim*, the *en banc* Ninth Circuit explained how its decision is

consistent with the policy behind EAJA:

> A full award of attorneys' fees here is consistent with the EAJA's goal of creating a level playing field in cases in which there is an imbalance of power and resources. "The EAJA grew out of a concern for the unequal position of the individual vis à vis an insensitive and ever-expanding governmental bureaucracy. The House Report expresses concern about the fact that ... the government with its greater resources and expertise can in effect coerce compliance with its position." []. . . . the small seventeen-lawyer law firm that represented her, McManis Faulkner, had similarly limited resources, but, when others refused, they agreed to take on her case, uncertain whether they would ever be compensated. On the other side of the table was the government and its virtually unlimited resources.

*Ibrahim*, 912 F.3d at 1179–80 (citation omitted).

The same policy considerations apply in this case.  But for this litigation, the government would have illegally implemented a large logging project over thousands of acres in designated critical habitat for the threatened lynx prior to ESA consultation on the Lynx Amendment; instead, the project was enjoined for almost two years until the required analysis was completed.  But for this litigation, the agencies would have continued to ignore critical substantive and procedural protections for the imperiled, endangered Cabinet-Yaak grizzly bear in an area that is crucial for the bear's survival and recovery; instead, the agencies will finally be forced to address the issue of how illegal roads are affecting these grizzly bears, and they may not move forward with new roads or authorizations of existing illegal roads in this area until they do so.  Plaintiff's counsel, two solo practitioners, took

this case "when others refused," and prevailed against "the government and its

virtually unlimited resources" on all claims litigated on appeal *See id.* Thus, the

policy considerations behind EAJA, as set forth by the *en banc* Ninth Circuit in

*Ibrahim*, fully support a fully compensable fee award in this case.

**D.  The rates requested are reasonable.**

Finally, the rates requested by Plaintiff's counsel are reasonable.  As set forth

in Plaintiff's original fee motion, four experienced plaintiffs' lawyers concur that the

rates requested are reasonable.  Doc. 92 at 10-13.  In this supplemental motion,

Plaintiff corrects the 2018 EAJA rate for time spent on the fee motion in 2018 to

$201.60, and applies that rate to time spent on the fee motion in 2019, pursuant to

Ninth Circuit guidance.[2]

Plaintiff has also adjusted Ms. Smith's rate for 2018 district court work to

$340/hour in light of this Court's April 4, 2019 Order in *Native Ecosystems Council*

*v. Krueger*, 2019 WL 1489839 (D. Mont. 2019).  Additionally, although this Court

awarded Mr. Bechtold $340/hour in that case due to his small role in that litigation,

a different court awarded Mr. Bechtold $415/hour in 2018.  Thus, Mr. Bechtold

continues to request $415/hour for his district court work in 2018 in this case.

Supplemental Bechtold Declaration ¶10.

---

[2]The EAJA rates are posted online:
https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039

Plaintiff requests a $25/year increase from these 2018 rates for work done in 2019.  In *Pollinator Stewardship Council* Appellate Commissioner noted that "the Northern District of California has awarded $450 per hour for 2008 to 2009 work by [Attorney Greg] Loarie" and held that the "hourly rates of $550 for Loarie . . . for the 2013 to 2015 work on the merits" was reasonable" because "Loarie's $450 hourly rate . . . reasonably ha[s] increased in the past eight years." *Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, 2017 WL 3096105, at *6 (9th Cir. 2017).  Accordingly, if the attorney's rate was $450 per hour in 2009 and reasonably increased to $550 per hour in 2013, that equates to a reasonable increase of $100 per hour over four years, i.e. a reasonable annual increase of $25 per hour. *See id.*  Applying this annual increase, Ms. Smith's requested rate for district court work in 2019 is $365/hour.  Likewise, Mr. Bechtold's requested rate for district court work in 2019 is $440/hour.

## III.  CONCLUSION

For all of the reasons set forth above and in Plaintiff's original fee motion, Plaintiff now requests $127,917.34 in attorney fees for Rebecca Smith, $70,426.94 in attorney fees for Tim Bechtold, $7,906.49 in attorney fees for Talasi Brooks, $1,982.69 in non-taxable costs/expenses, and $3,092.50 in expert witness fees, for a grand total of $211,325.96.

Respectfully submitted this 8th Day of April 2019.

/s/ Rebecca K. Smith
REBECCA K. SMITH
Public Interest Defense Center, P.C.

TIMOTHY BECHTOLD
Bechtold Law Firm, PLLC

Attorneys for Plaintiffs

13

CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing is 3,062 words, excluding the caption, table of contents, table of authorities, signature blocks, and certificate of compliance.

*/s/ Rebecca K. Smith*
Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, P.C.

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

Attorneys for Plaintiffs