VIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | CV 15–54–M–DLC |
| Plaintiff, | |
| | ORDER |
| vs. | |
| CHRISTOPHER SAVAGE, Kootenai National Forest Supervisor, FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and UNITED STATES FISH & WILDLIFE SERVICE, an agency of the U.S. Department of the Interior, | |
| Defendants, | |
| and | |
| KOOTENAI FOREST STAKEHOLDER COALITION, a Montana Corporation, and LINCOLN COUNTY, a political subdivision of the State of Montana, | |
| Defendant-Intervenors. | |

Before the Court are the Motion for Attorney Fees (Doc. 92) and

Supplemental Motion for Attorney Fees (Doc. 112) of Plaintiff Alliance for the

Wild Rockies ("Alliance"). Alliance seeks a total award of $215,085.90 in fees and costs under the Endangered Species Act ("ESA") and/or the Equal Access to Justice Act ("EAJA"). The Federal Defendants, collectively referred to as "Forest Service" throughout this Order, oppose the motion, arguing that attorneys' fees are improper and, in the alternative, that Alliance should receive no more than $30,282.77. The Court grants Alliance's motions in part, awarding a total of $163,233.53.

## BACKGROUND

Because the parties are familiar with the history of this case, the Court provides only a brief background summary. Alliance filed suit in 2015, bringing five claims for relief. Alliance withdrew one claim, and the Court granted summary judgment to the Forest Service and the Defendant-Intervenors on the remaining four claims. *All for the Wild Rockies v. Savage*, 375 F. Supp. 3d 1152, 1154–55 (D. Mont. 2019). Alliance appealed from this Court's determinations that: (1) the Forest Service did not violate the ESA by not completing reconsultation regarding Canada lynx prior to proceeding with the challenged East Reservoir Project (the "Project"); and (2) the Forest Service did not violate the National Forest Management Act ("NFMA") when it authorized road construction within the Tobacco BORZ, an area outside of the grizzly bear recovery zone where

-2-

grizzly bear activity is nonetheless significant. *See All. for the Wild Rockies v. Savage*, 897 F.3d 1025 (9th Cir. 2018).

Solely on the basis of its ESA argument, Alliance moved for a preliminary injunction pending appeal, which the Ninth Circuit granted. *All. for the Wild Rockies v. Savage*, No. 16-35589, 2016 WL 4800870 (9th Cir. Sept. 13, 2016). While the injunction was in effect, the Forest Service completed the ESA reconsultation Alliance requested in this litigation. *All. for the Wild Rockies*, 897 F.3d at 1029–30. Because reconsultation was complete, Alliance's ESA claim was dismissed as moot, and the Ninth Circuit vacated this Court's prior determination that the Forest Service had not violated the ESA. *Id.*

As for the single remaining claim, the Ninth Circuit sided with Alliance, holding that the Forest Service acted arbitrarily and capriciously by failing to first assess the baseline road mileage within the BORZ, in violation of NFMA. *All for the Wild Rockies v. Savage*, 897 F.3d 1025 (9th Cir. 2018). Following remand from the Ninth Circuit, this Court remanded the matter to the Forest Service without vacating the operative Record of Decision ("ROD"). *All. for the Wild Rockies*, 375 F. Supp. 3d 1152.

## LEGAL STANDARD

Alliance seeks fees under the EAJA and/or the ESA. Fee awards under the EAJA are nondiscretionary. 28 U.S.C. § 2412(d)(1)(A). "A court shall award to a

prevailing party other than the United States fees and other expenses . . . , unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.*

Under the ESA, in contrast, "[t]he court . . . may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). The standard is intentionally looser than the EAJA's "prevailing party" standard; it "was meant to expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing parties*—parties achieving *some success*, even if not major success." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983) (discussing the appropriate standard of the Clean Water Act); *see Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879, 884 (9th Cir. 2004) (explaining the application of *Ruckelshaus* to fee disputes brought under the ESA).

Trial courts are best situated to decide fee disputes, and their decisions are reviewed for abuse of discretion. *Cal. Water*, 386 F.3d at 883. "A district court abuses its discretion if its decision is based on an erroneous conclusion of law or if the record contains no evidence on which it rationally could have based its decision." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1005 (9th Cir. 2002) (quotation omitted). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is

−4−

to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

**DISCUSSION**

Before determining the appropriate award, the Court first considers the threshold issue of Alliance's entitlement to fees under both the ESA and the EAJA. An award is "appropriate" under the ESA, and Alliance is a "prevailing party" under the EAJA, and Alliance is accordingly entitled to a fee award. Ultimately, the Court adjusts the amount of the requested award to reflect Alliance's overall success.

## I.     Entitlement to Fees

### A. ESA

The parties dispute whether Alliance is entitled to an award of fees under the ESA. Ultimately, Alliance did not receive a binding, final judgment on its ESA claim, which was dismissed as moot. The question here is whether the injunction issued by the Ninth Circuit, which precipitated the mootness determination, entitles Alliance to fees. It does.

The ESA authorizes "any person" to "commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . , who is alleged to be in violation of any provision of [the ESA] . . . ." 16 U.S.C. § 1540(g)(1)(A). A court considering

-5-

a citizen suit seeking enforcement of the ESA "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Although it is not explicit in the text of the statute, "the Supreme Court has read a prevailing party requirement"—if somewhat loose—"into the ESA." *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999) (citing *Ruckelshaus*, 463 U.S. at 682 & n.1); *see also Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 805 (9th Cir. 2009).

The legal standard applicable to plaintiffs seeking fee awards under the ESA is somewhat unsettled. In 1984, the Ninth Circuit held that the touchstone is whether the party seeking fees "ma[d]e a substantial contribution to the goals of [the ESA]." *Carson-Truckee Water Conservancy Dist. v. Sec'y of the Interior*, 748 F.2d 523, 526 (9th Cir. 1984) (quoting *Sierra Club v. Gorsuch*, 672 F.2d 33, 42 (D.C. Cir. 1982), *rev'd on other grounds by Ruckelshaus*, 463 U.S. 680). The Court has since made it clear that the "substantial contribution" standard no longer applies to "prevailing *defendants*," who may be entitled to a fee award even if their litigation position does not advance the goals of the ESA.[1] *Marbled Murrelet*, 182

---

[1] It is a rare, but not unfathomable, case in which a defendant, rather than a plaintiff, advances the goals of the ESA. *See, e.g.*, *Modesto Irrigation Dist. V. Gutierrez*, 619 F.3d 1024 (9th Cir. 2010) (addressing a challenge to the listing of steelhead as a threatened species under the ESA). In any event, *Marbled Murrelet* likely made fees more available to prevailing defendants in ESA cases; it is unclear whether it should also be understood to make fees less available to prevailing plaintiffs.

F.3d at 1094 (emphasis added). Trial courts have, at times, continued to apply the substantial contribution standard to plaintiffs' fee requests. *See All. for the Wild Rockies v. U.S. Dep't of Ag.*, CV 11–76-M–CCL, 2016 WL 4766234, at *4 (D. Mont. Sept. 13, 2016); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV S–06–2845 LKK/JFM, 2012 WL 1038131, at *3 (E.D. Cal. March 27, 2012); *see also Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 103 Fed. Appx. 627, 629 (9th Cir. 2004) ("We need not resolve this doctrinal dispute, because [the] motion for attorneys fees satisfied both standards.").

In this instance, the precise standard is irrelevant, as Alliance is a prevailing party, and its lawsuit substantially contributed to the goals of the ESA.[2] Thus, the Court will first explain why Alliance is a prevailing party before turning to whether this lawsuit advanced protections for an endangered or protected species.

"[T]he term 'appropriate' modifies but does not completely reject the traditional rule that a fee claimant must 'prevail' before it may recover attorney's fees." *Ruckelshaus*, 463 U.S. at 686. In *Ruckelshaus* the Supreme Court, considering identical language within the Clean Air Act, held that the "whenever

---

[2] The Court notes that the two-step inquiry it applies in an abundance of caution appears to contract, rather than "expand[,] the class of parties eligible for fee awards" in comparison to those eligible under the "prevailing party" standard. *Ruckelshaus*, 463 U.S. at 688. This problem is alleviated somewhat by the continued survival of the "catalyst theory" in ESA lawsuits, which essentially expands the definition of "prevailing party." *See Cal. Water*, 386 F.3d at 884 (applying catalyst theory to ESA fee dispute despite its obsolescence under the "prevailing party" standard under which it was developed). In any event, the concern is academic, as Alliance has satisfied any potentially applicable standard.

. . . appropriate" standard "was meant to expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties—parties achieving *some success*, even if not major success." *Id.* at 688. "Put differently, . . . Congress intended to eliminate both . . . restrictive readings of 'prevailing party' . . . and the necessity for case-by-case scrutiny by federal courts into whether plaintiffs prevailed 'essentially' on 'central issues.'" *Id.* (citations omitted). The Court went on to explain that "Congress understood 'prevailing party' and 'partially prevailing party' as two quite different things. *Id.* at 689.

Here, however, the Court need not parse the distinction too carefully, as Alliance satisfies the more demanding "prevailing party" standard.[3] "[W]hen a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is a prevailing party eligible for a fee award." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013). In that instance, "although the plaintiff never secured a final judgment granting permanent injunctive relief, the preliminary injunction ended up affording all the relief that

---

[3] It could be that the "partially prevailing party" standard set forth in *Ruckelshaus* simply authorizes an award of fees beyond those incurred in pursuing Alliance's ESA claim. As a logical corollary to the discussion of *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) (en banc), *see infra* p. 23–26, that authorization may well be unnecessary, as application of *Ibrahim* leads to the same result. However, the Court concludes that, even in the absence of *Ibrahim*, it would reach the same result independently by applying the "partially prevailing party" standard.

−8−

proved necessary." *Id.*; *see also Watson v. Cty. of Riverside*, 300 F.3d 1092, 1095–96 (9th Cir. 2002) ("Having succeeded in winning a preliminary injunction . . . , Watson obtained significant, court-ordered relief that accomplished one of the main purposes of his lawsuit. This is so even though he failed to prevail on his other claims.").

After this Court issued its decision on the merits, concluding that the Forest Service was entitled to summary judgment on all four of Alliance's claims, Alliance appealed to the Ninth Circuit and moved for an injunction pending appeal. The motion was grounded singularly in the ESA claim, with Alliance arguing that it was entitled to an injunction to avoid the irreparable harm likely to occur if the Forest Service's planned timber sale went forward without agency reconsultation. The Ninth Circuit agreed, granting the injunction and staying the Project.

While the injunction was in force but before the Ninth Circuit issued its opinion on the merits, the Forest Service completed reconsultation. *All. for the Wild Rockies*, 897 F.3d at 1031. The Court therefore concluded that Alliance "obtained all that it sought with [its lynx ESA claim]," rendering the claim moot. *Id.* The Ninth Circuit remanded with instructions to vacate the portion of this Court's judgment addressing the reconsultation claim and to dismiss the claim as moot, which this Court did. *Id.*; *All. for the Wild Rockies*, 375 F. Supp. 3d at 1155. These events are immediately analogous to those of *Higher Taste* and *Watson*;

-9-

here, as there, "the plaintiff w[on] a preliminary injunction and the case [wa]s rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control." *Higher Taste*, 717 F.3d at 717.

The Forest Service recognizes that preliminary injunctive relief may be grounds for classifying a litigant as a prevailing party. (Doc. 118 at 11–12.) It nonetheless contends that the injunction issued pending appeal is insufficient because the Ninth Circuit did not make a "judicial determination that the claims on which the plaintiff obtain[ed] relief are potentially meritorious." (Doc. 118 at 12 (quoting *Higher Taste*, 717 F.3d at 715.) It is true that the Court did not explain its thinking in its order granting the injunction pending appeal. But it found the *Winter* test satisfied, meaning that—at minimum—the Court determined that Alliance raised "serious questions going to the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Thus, even if the Forest Service was correct that the Court should look beyond the functional effect of an injunction into the merits of arguments presented to and decided by a different court—a dubious proposition[4]—the Court must conclude that the Ninth Circuit found Alliance's ESA claim to be "potentially meritorious." *Higher Taste*, 717 F.3d at 715.

---

[4] The Forest Service's proposed standard is particularly problematic in the context of a case such as this, where this Court made its own determination of the merits of Alliance's arguments and found them lacking. It is not the role of the district court to question decisions made by the circuit court, especially when the district court's conclusions are disturbed on appeal.

The Court is similarly unconvinced by the Forest Service's position that Alliance must show that its lawsuit directly caused reconsultation if it is to prevail in this fee dispute. (Doc. 118 at 13.) As a legal matter, a "prevailing party" need not show causation. *Compare Cal. Water*, 986 F.3d at 886 (requiring "clear, causal relationship" under catalyst theory), *with Higher Taste*, 717 F.3d 712 (imposing no such requirement under prevailing party theory). And, more practically speaking, the preliminary injunction did, in fact, cause the agencies to reconsult prior to proceeding with the Project because the injunction delayed the Project. Alliance did not seek to force reconsultation—which would have occurred in any event—but to delay the project until reconsultation was complete. Alliance has demonstrated that it was the prevailing party as to its lynx ESA claim.

On the other hand, the Court disagrees with Alliance that it brought—and prevailed upon—a grizzly bear ESA claim. The Ninth Circuit agreed with Alliance that the Forest Service failed to comply with NFMA when it authorized road construction in an area with road restrictions in place for the protection of grizzly bears. But the fact that the challenged activity could affect a protected species does not transform Alliance's NFMA claim into an ESA claim. The Ninth Circuit determined that the Forest Service violated its own standards, contrary to the requirements of NFMA. Whether those standards are themselves a means of implementing the ESA is neither here nor there. No court determined that the

Forest Service violated the ESA by authorizing road construction and reclassification in the Tobacco BORZ; indeed, Alliance did not ask either this Court or the Ninth Circuit to do so.

Although a "substantial contribution" inquiry may be unnecessary, *see supra* p. 6–7 & n.2, it is not harmful, as the standard is satisfied here. The ESA was enacted to conserve endangered and threatened species. 16 U.S.C. § 1531(c). While there is no evidence that the outcome of this litigation directly prevented the taking of lynx, by forcing reconsultation prior to initiation of the project, the injunction nonetheless "served the public interest by assisting the interpretation or implementation of the [ESA]." *Carson-Truckee*, 748 F.2d at 525 (quoting *Ala. Power v. Gorsuch*, 672 F.2d 1, 3 (D.C. Cir. 1982) (per curium)).

Because Alliance is a "partially prevailing party" as to its lynx ESA claim and because this litigation "substantially contributed" to the purposes of the ESA, an award is "appropriate" under the ESA.

### B. EAJA

Generally, there is no need to conduct an independent EAJA analysis where, as here, fees are authorized under the ESA. *See Or. Nat. Desert Ass'n v. Vilsack*, No. 2:07–cv–01871–HA, 2013 WL 3348428, at *2. Here, however, Alliance's ESA claim was moot when the Ninth Circuit issued its opinion, and it cannot be said that the lynx ESA claim is legally tethered to the remainder of Alliance's case.

*See Native Ecosystems Council v. Weldon*, 921 F. Supp. 1069, 1080 (D. Mont. 2013) (granting fees under the EAJA and not the ESA). That said, Alliance meets the threshold for fees under the EAJA in regard to its NFMA claim regarding road activities in the Tobacco BORZ.

The Forest Service "do[es] not dispute that [Alliance] is a prevailing party under [the] EAJA for the NFMA claim." (Doc. 118 at 9 n.4.) Rather, it argues that its position "was substantially justified" and that a fee award is therefore inappropriate. 28 U.S.C. § 2412(d)(1)(A). Its argument is premised in large part on this Court's orders granting summary judgment and remanding this matter to the Forest Service without vacating the Record of Decision. While the Court agrees that the Project itself was not fatally flawed,[5] it cannot square the substantial justification standard with the Ninth Circuit's finding that authorization of road activity within the Tobacco BORZ was arbitrary and capricious and therefore in violation of the NFMA.

"If the government's position violates the Constitution, a statute, or its own regulations, a finding that the government was substantially justified would be an abuse of discretion." *Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1278 (9th Cir. 1997). Alliance prevailed in its argument that the authorization of road

---

[5] This is not to say that the Forest Service's argument is irrelevant, only that it is misplaced. The Court considers the parties' overall success in the lawsuit below, in its determination of the total amount of the award. *See infra* p. 23–26.

construction and reclassification violated NFMA because it was inconsistent with an "unequivocal" Forest Plan provision. *Alliance for the Wild Rockies*, 897 F.3d at 1035. The Forest Service has not "prove[n] that that the regulation it violated was ambiguous, complex, or required exceptional analysis." *Meinhold*, 123 F.3d at 1278. Indeed, it does not argue as much. Instead, it points to the support that its position found from amici and this Court as evidence that its litigation position was reasonable. Stating the obvious, this Court does not stand in review of the Ninth Circuit, and its order granting summary judgment on this issue is irrelevant.

The EAJA "encourage[s] litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court." *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007). Here, Alliance discovered and successfully challenged such an error, and it is entitled to fees under the EAJA, at least as to its claim regarding road activity in the Tobacco BORZ.

## II. Calculation of Fees

Under either the EAJA or the ESA, the court must begin by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate" to determine the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The EAJA authorizes an award of "reasonable attorney fees." 28 U.S.C. §

-14-

2412(d)(2)(A).  Similarly, under the ESA, "fees are calculated according to the lodestar." *S. Yuba River Citizens League*, 2012 WL 1038131, at *2.

Whether the party seeking fees is entitled to the lodestar for pursuing unsuccessful claims depends on the relationship between the successful and unsuccessful claims and the parties' overall success in the litigation.  *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) (en banc).  In this instance, all of Alliance's claims challenged the same action by the Forest Service, and they are accordingly sufficiently related to one another for a full award. However, because Alliance achieved a fairly modest victory, the Court slightly discounts the lodestar.

## A. Lodestar Calculation

### Reasonable Hourly Rate

The Court first considers the reasonable hourly rate for the involved attorneys.  The standard for calculating a reasonable hourly rate differs between the ESA and the EAJA.  The EAJA includes a statutory cap (increased annually by the Ninth Circuit to account for cost of living), which may be set aside if the "court determines that . . . a special factor . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).  "Special factor[s]" do not include "factors applicable to a broad spectrum of litigation," such as "[t]he novelty and difficulty of issues, the undesirability of the case, the work and ability of counsel, and the results

obtained." *Pierce v. Underwood*, 487 U.S. 552, 573 (1988) (internal quotation marks and citation omitted). However, an increased hourly rate may be justified for "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." *Id.* at 572. A rate is reasonable if the "fees . . . are adequate to attract competent counsel, but . . . do not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

The Court agrees that Talasi Brooks, who was in her first year of law practice (after a year of clerking), is entitled to the adjusted EAJA rate of $190.06 for 2014, the year in which all of her hours were incurred. Similarly, the Court agrees that the other two attorneys who performed work on behalf of Alliance, Rebecca K. Smith and Timothy Bechtold, should receive the adjusted EAJA rate of $201.60 for time spent seeking attorneys' fees. *See Native Ecosystems Council v. Krueger*, CV 12–27–M–DLC, 2019 WL 1489839, at *5 (D. Mont. April 4, 2019).

However, as to Smith's and Bechtold's work on the merits, the EAJA adjusted rate is not "adequate to attract competent counsel." *Blum*, 465 U.S. at 895. A generalist could not have litigated this case with the same degree of success; and a gifted but inexperienced environmental lawyer would have spent significantly more time preparing this case. Smith and Bechtold have substantial experience in environmental litigation, and "knowledge [and] specialized skill" such as theirs is essential for complex, technical cases such as this. Thus, Smith's

-16-

and Bechtold's reasonable hourly rates are determined without regard to whether fees are awarded under the EAJA or the ESA.

This Court recently considered a request for fees under the ESA by Smith and Bechtold. *Native Ecosystems Council*, 2019 WL 1489839. Adopting the reasoning of that case, the Court will award an equivalent hourly rate to Smith and Bechtold as attorneys of "comparable experience, skill and reputation." *Id.* at * 5 (quoting *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006)). Both Smith and Bechtold are excellent, experienced environmental litigators, and they share equal responsibility—and should share equal benefit—for their success in this litigation.[6] Similarly, the Court cannot justify a disparity in appellate fees between Smith and Bechtold, both of whom are solidly in the prime of their careers and operating at the highest level of public interest environmental litigation in Montana. Thus, the Court will award each attorney an additional $100/hour for appellate work.

The Court remains skeptical of a lockstep $25/hour annual increase in fees. Now, as in *Krueger*, the Court applies a $10/hour annual increase. In a sworn declaration, Bechtold claims that "[s]imply increasing the fee by $10 each year with no other adjustments or increases will not keep pace with cost of living

---

[6] The hourly rates calculated do recognize the disparity in experience between Bechtold and Smith early in this litigation, when Smith was closer to the beginning of her practice. However, as discussed in *Krueger*, Smith has made significant gains over the course of the last decade.

-17-

expenses." (Doc. 119-2 at 2.) However, an increase of $25/hour annually is untenable. Assuming, conservatively, that 1500 hours a year are billed and recovered, such an increase comes out to $37,500 each year—or, put another way, $150,000 every four years. Certainly, overhead costs go up, and experience warrants higher fees (in large part because fewer hours are to be reasonably expended), but the Court is concerned with rubber-stamping a large annual increase with no apparent limit.[7] Thus, the Court increases the $340/hour rate awarded in *Krueger* for work performed in 2018 to $350/hour for work performed in 2019. On the other hand, a $25/hour increase made good sense earlier in Smith's career, as she grew from a skilled, if relatively inexperienced, litigator, into Bechtold's peer. *See Krueger*, 2019 WL 1489839, at *5.

Thus, with the exception of fees incurred in preparing the fee petition, the Court awards fees at the following rates:

---

[7] The Court notes, too, that Alliance's reading of *Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, No. 13–72346, 2017 WL 3096105 (9th Cir. June 27, 2017), is overly generous. There, the Ninth Circuit Appellate Commissioner determined that a total increase of $100/hour for an attorney practicing from 2008 to 2015 was reasonable, finding that the rate "reasonably ha[s] increased in the past eight years." *Id.* at *6. While it is true that the attorney charged $100/hour more in 2013 than in 2009, the case does not hold Alliance's argument that a $25/hour annual increase is per se reasonable. In fact, that attorney earned the same hourly fee from 2013 through 2015.

|  | 2014 | | 2015 | | 2016 | |
|---|---|---|---|---|---|---|
|  | **District** | **Appellate** | **District** | **Appellate** | **District** | **Appellate** |
| **Rebecca Smith** |  |  | $280 | $390 | $305 | $405 |
| **Timothy Bechtold** | $300 | $400 | $310 | $410 | $320 | $420 |
|  | **2017** | | **2018** | | **2019** | |
|  | **District** | **Appellate** | **District** | **Appellate** | **District** | **Appellate** |
| **Rebecca Smith** | $330 | $430 | $340 | $440 | $350 |  |
| **Timothy Bechtold** | $330 | $430 | $340 | $440 | $350 |  |

## 1. Number of Hours

The Forest Service raises several challenges to the total amount of hours

claimed by Brooks, Smith, and Bechtold. The Forest Service argues that Alliance

improperly seeks an award for time spent responding to amici and for time

Bechtold spent watching oral argument. Alliance concedes that it is not entitled to

fees for the 4.6 hours spent responding to amici, and the Court accordingly will not

award fees for that time. The Court further finds that Alliance is not entitled to

compensation for the 0.5 hours that Bechtold spent watching the oral argument

online, and it also deducts that time.

The Forest Service additionally asks for a 20% reduction in overall time "for

. . . excessive pre-complaint time, Ms. Brooks' inexperience, and . . . vague billing

entries." (Doc. 118 at 26.) The Court disagrees that any such reduction is

necessary. Time expended prior to filing the complaint translates to less time

-19-

expended after litigation commenced. And Brooks's work likely reduced the overall fee request, as Bechtold and Smith were able to avoid many hours of work at their higher hourly rates. Finally, the billing entries submitted in support of the petition are not vague, and the total number of hours spent on this complicated case is not unreasonable. Thus, the Court will not reduce the overall award by any percentage for excessive time.

### B. Expert Fees

Alliance also seeks $3,092.50 in expert witness fees incurred in its pursuit of the present fee petition. The Court will not award any expert fees, as it finds that the "declarations are neither necessary nor helpful." *Cascadia Wildlands v. BLM*, 987 F. Supp. 2d 1085, 1096 (D. Or. 2013) (internal quotation marks and citation omitted); *see also All. for Wild Rockies v. U.S. Dep't of Agric.*, No 9:11-CV-76-M-CCL, 2016 WL 4766234, at *4 (D. Mont. Sept. 13, 2016). Indeed, as mentioned above, this Court recently considered a fee request from the same attorneys, and it had no need to consult the declarations prepared by Alliance's experts.

### C. Costs

Alliance requests $1,982.69 in costs, comprising both district court and non-taxable appellate costs. The Forest Service argues that the Ninth Circuit ordered each party to bear its own costs on appeal and that Alliance therefore may recover no more than $443.56 in district court costs. Alliance argues that the Ninth

Circuit's order extends only to those taxable costs that would be submitted to the appellate court in a bill of costs. Because the Ninth Circuit "repeatedly [has] allowed prevailing parties to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties," Alliance has the stronger argument. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). Thus, the Court will include $1,982.69 in its calculation of Alliance's fee award.

### D. Baseline Calculation

Applying the rates and hours discussed above, the Court reaches the following amount, inclusive of the lodestar and appropriate additional fees and costs:

| Rebecca K. Smith | | | |
|---|---|---|---|
| | **Rate** | **Hours** | **Total** |
| 2015 District Court | $280 | 135.1 | $37,828.00 |
| 2016 District Court | $305 | 37.2 | $11,346.00 |
| 2016 Appellate Court | $405 | 74 | $29,970.00 |
| 2017 Appellate Court | $430 | 68.1 | $29,283.00 |
| 2018 Appellate Court | $440 | 2.7 | $1,188.00 |
| 2018 District Court | $340 | 35.6 | $12,104.00 |
| 2019 District Court | $350 | 1.2 | $ 420.00 |

| | Rate | Hours | Total |
|---|---|---|---|
| 2018 Fee Petition | $201.60 | 17.5 | $3,528.00 |
| 2019 Fee Petition | $201.60 | 25.7 | $5,181.12 |
| | | **Total** | **$130,848.12** |

### Timothy M. Bechtold

| | **Rate** | **Hours** | **Total** |
|---|---|---|---|
| 2014 District Court | $300 | 45.7 | $13,710.00 |
| 2015 District Court | $310 | 75.1 | $23,281.00 |
| 2016 District Court | $320 | 14.2 | $4,544.00 |
| 2016 Appellate Court | $420 | 27.1 | $11,382.00 |
| 2017 Appellate Court | $430 | 9.7 | $4,171.00 |
| 2018 District Court | $340 | 3.9 | $1,326.00 |
| 2018 Appellate Court | $440 | 5.2 | $2,288.00 |
| 2019 District Court | $350 | 1.1 | $ 385.00 |
| Fee Petition | $201.60 | 11.0 | $2,217.60 |
| | | **Total** | **$63,304.60** |

### Talasi Brooks

| | **Rate** | **Hours** | **Total** |
|---|---|---|---|
| 2014 District Court | $190.06 | 41.6 | $7,906.50 |
| | | **Total** | **$7,906.50** |

| Non-taxable Costs on Appeal, District Court Costs, and Other Expenses | | | $1,982.69 |
|---|---|---|---|
| | | **Grand Total** | **$204,041.91** |

## III. Compensation for Unsuccessful Claims

The question remains whether Alliance is entitled to compensation for all work performed in this litigation, even though it was decidedly not a prevailing party as to three of its five original claims and ultimately received fairly modest victories on the lynx reconsultation and Tobacco BORZ road activity claims.

"Where a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee . . . [which] should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 437 (1983). "[W]hen a plaintiff prevails on only some of his claims for relief or achieves limited success[,]" courts must consider: (1) the relationship between the claims on which the plaintiff prevailed and those on which he did not; and (2) whether the plaintiff's degree of success justifies an award for fees incurred in pursuing related, but ultimately unsuccessful, claims. *Ibrahim*, 912 F.3d at 1172 (internal quotation marks and citation omitted).[8]

---

[8] *Ibrahim*, like *Hensley* before it, involves an award of fees under the EAJA. Because both parties rely exclusively on the *Hensley-Ibrahim* line of cases to justify their arguments regarding whether a full fee award is appropriate, the Court similarly will apply *Ibrahim* without considering whether it properly applies where, as here, a plaintiff is entitled to an award of fees under both the ESA and the EAJA.

Alliance achieved "limited success" in this lawsuit. *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). It initially brought five claims and can be considered a prevailing party as to two of those claims, as outlined above. Alliance sought to enjoin the Project in its entirety, to force the Forest Service back to the drawing board, and it received a delay in the project during litigation and a pause on road activities within the Tobacco BORZ—affecting approximately 20% of the landmass encompassed by the Project—while the Forest Service recomputes road densities. Thus, the the two-step *Ibrahim* test governs whether Alliance is entitled to a full award.

## A. Relationship between Claims

There need not be "commonality of *both* facts *and* law to conclude that claims are related. . . . [T]he focus is to be on whether the unsuccessful and successful claims arose out of the same course of conduct." *Ibrahim*, 912 F.3d at 1174–77 (internal quotation marks and citations omitted). In this instance, it is clear enough that authorization of the East Reservoir Project is the challenged course of conduct, and it is common to all of Alliance's claims. The first step is easily satisfied.

## B. Level of Success

The second step poses a greater obstacle to a full fee award. The Court finds that, although most of the time spent is compensable, it cannot be said that

Alliance's overall level of success was "excellent." *Ibrahim*, 912 F.3d at 1178

(quoting *Hensley*, 461 U.S. at 435). Rather, the Court would classify the result as

fair to good for Alliance, which asked the Court to enjoin implementation of the

entire Project. This is not a case in which Alliance "achieved [its] primary goal of

litigation," but Alliance did receive relief on a smaller scale. *See All. for Wild*

*Rockies v. Krueger*, No. CV 12-150-M-DLC, 2014 WL 46498, at *4 (D. Mont.

Jan. 3, 2014).

Nor can it be said that this case is likely to have a broad impact on the

parties or other potential litigants. On this point, the present case is not

comparable to *Ibrahim*, in which the plaintiff "established important principles of

law" and achieved many firsts, having been recognized as:

> the first person ever to force the government to admit a terrorist
> watchlisting mistake; to obtain significant discovery regarding how the
> federal watchlisting system works; to proceed to trial regarding a
> watchlisting mistake; to force the government to trace and correct all
> erroneous records in its customer watchlists and databases; to require
> the government to inform a watchlisted individual of her [Terrorist
> Screening Database] status; and to admit that it has secret exceptions to
> the watchlisting reasonable suspicion standard.

*Ibrahim*, 912 F.3d at 1178. Alliance raises no argument that this litigation has

significantly advanced environmental law or blazed new trails to justify a full fee

award.

That said, most of the work performed to litigate Alliance's unsuccessful

claims served Alliance in its successful pursuit of the lynx ESA and Tobacco

-25-

BORZ claims. Thus, the Forest Service's position—that the Court should cut 4/5 of the requested fees because the Ninth Circuit opinion only found for Alliance as to 1/5 of the claims originally brought—is too extreme. Instead, the Court will deduct a modest 20% from the lodestar to account for Alliance's somewhat limited success in the case overall. Additionally, because the Court deducts 20% from the requested fees incurred in litigating the merits, it also discounts the fee litigation award by 20%. *See Thompson v. Gomez*, 45 F.3d 1365, 1367–68 (9th Cir. 1995).

Thus, the Court will award a total amount of $163,233.53 to Alliance.

Accordingly, IT IS ORDERED that:

1. Plaintiff's Motion for Attorney Fees (Doc. 92) and Supplemental Motion for Attorney Fees (Doc. 112) are GRANTED IN PART and DENIED IN PART; and

2. Alliance is entitled to a total fee award of $163,233.53.

DATED this 22nd day of July, 2019.

Dana L. Christensen, Chief Judge
United States District Court

-26-